## Anderson et al. *v.* Guerrein Sky-Way Amusement Company et al., Appellants.

Argued November 25, 1942. Before SCHAFFER, C. J.; MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*T. P. Dunn,* with him *David S. Maxwell,* for appellants.

*Enoch C. Filer,* with him *Wm. B. Washabaugh, Jr.,* for appellees.

OPINION BY MR. JUSTICE HORACE STERN, January 4, 1943:

Defendant corporation, in the late spring of 1941, established an open-air, sound-equipped, motion picture theatre about four miles west of the city of Erie and three-quarters of a mile south of the lake. It offered accommodations for 500 cars. The screen was on a wall fifty feet high on the south side of the amphitheatre, with connecting walls or wings running obliquely toward the

northeast and northwest. A purely residential district of a high-class suburban character lay between the theatre and the lake, and among the homes there located were those of the fifty-four plaintiffs in this case. Pointed out toward this territory from the face of the screen were four large, amplifying horns, the sounds emanating from which, in megaphone fashion, were naturally accentuated by the screen and wings acting as a sounding board. Counsel for some of the plaintiffs had warned the officers of defendant corporation prior to the erection of the theatre that if its operation should prove to be a nuisance injunction proceedings would be started, and when the apprehensions thus expressed became a reality the present bill in equity was filed. The court found that the operation of the theatre constituted a nuisance and ordered it closed, retaining jurisdiction of the suit, however, for the purpose of making any further orders necessary to carry the decree, or any modification of it, into effect.

The action of the court was amply justified by the evidence. Defendants produced a host of witnesses who testified that they were not disturbed by the operation of the theatre, but practically all of them were residents of a district to the south or rear of the screen and their position was thus different from that of plaintiffs, who received the full blast from the horns directed toward their homes. The court found that the theatre was operated throughout the summer months of 1941 and the spring of 1942 from about 8:30 o'clock each evening until as late sometimes as 1:30 o'clock in the morning, with noises of varying degrees of continuity and intensity and consisting of music, singing, talking, shouting, shrieking, gun play, raucous laughter, "mob scenes", amplified airplane noises and other types of sounds, carried to the homes of the plaintiffs in such manner as to disturb their rest, interfere with their ordinary conversation, distract them from reading and working, make necessary the closing of windows on hot summer nights and keep them awake even with the windows closed, interfere with their enter-

tainment of guests, drive them from their grounds and porches into their houses, force them to abandon the use of their bedrooms having southern exposure, and on occasions compel some of them to leave their homes entirely for the evening in order to escape from the intolerable noises. The factual finding thus made by the chancellor, affirmed by the court in banc, is conclusive and warrants the decree. "No man has a right to take from another the enjoyment of the reasonable and essential comforts of life, and, consequently, cannot commit acts on his own premises calculated to interfere with the reasonable enjoyment by others of their homes": *Edmunds v. Duff*, 280 Pa. 355, 364, 124 A. 489, 491.

One of the principal defenses advanced in opposition to the injunction was that defendants attempted, in February, 1942, to purchase some "parkway" cable which was a part of equipment designed to reduce the noises, but they were unable to obtain a preference rating for this material from the War Production Board. Apart from the fact that as early as June, 1941, counsel for plaintiffs, before filing the bill in equity, had suggested to the officers of defendant corporation methods by which the noises might be remedied and defendants at that time made little if any attempt to heed the suggestion, it is obvious that the defense thus offered is legally unavailing. The operation of the theatre is neither a public duty nor a private necessity, and if defendants cannot operate it, for whatever reason, without depriving plaintiffs of the normal enjoyment of their homes, they must abandon the enterprise altogether. Inability, because of war conditions, to obtain priorities on material may excuse the non-performance of a contractual obligation (Act of June 28, 1940, sec. 2 (a), 41 U. S. C. A. pocket part pp. 144, 145) but certainly not the maintenance of an unnecessary nuisance.

One of defendants' witnesses who testified in regard to the noise he heard was asked by defendants' counsel: "Was it a noise that you think would bother a reasonable person?" Another such witness was asked: "Where you

did hear it was it loud enough to disturb a reasonable person?" Objections to these questions were properly sustained. While every description of the nature and intensity of a sound involves to some extent a subjective impression and therefore a judgment or conclusion on the part of a witness, the questions here propounded called, in addition, for an opinion as to the sensitivity to noise of a "reasonable" person. Elementary rules of evidence preclude such questions: *Graham v. Pennsylvania Co.*, 139 Pa. 149, 21 A. 151; *Shaffer v. City of Pittsburgh*, 336 Pa. 273, 9 A. 2d 395.

The hearing in this case began on February 9, 1942, and when, on the following day, defendants announced that they intended to install new equipment in an attempt to lessen the noises the court continued the case until after the opening of the theatre in the spring in order to see whether the evils complained of would be corrected. The theatre started operation again on April 23, and on June 4 the hearing was resumed. Witnesses for plaintiffs testified that the conditions were no better than before. The chancellor allowed defendants to reopen the entire case and give additional evidence as to all the issues involved, but, not satisfied with this, they moved for a further indefinite continuance to enable them to make certain tests with sound-measuring devices for the purpose of contradicting the testimony of plaintiffs' witnesses; they urged that the continuance should be granted for the additional reason that their original counsel had withdrawn from the case a few days before, leaving insufficient time for present counsel to prepare the case properly. The court overruled the motion. Defendants have no just cause for complaint. The court throughout was liberal in the time allowed them to present testimony and to remedy the conditions. An application for a continuance is an appeal to the discretion of the trial judge and his action in regard thereto will not be reversed unless such discretion is abused: *Davidson v. Davidson*, 262 Pa. 520, 106 A. 64; *Gurdus v. Philadel-*

*phia National Bank*, 273 Pa. 110, 116, A. 672; *Galloway v. Schweisfurth,* 333 Pa. 507, 3 A. 2d 916.

The court did not make findings of fact or state conclusions of law of its own, but merely affirmed or refused the requests for findings and conclusions presented by the parties. As these requests adequately covered all the factual and legal issues involved this practice substantially complied with the requirements of Equity Rule 67.

Decree affirmed at cost of defendants.