## Bierstein, Appellant, v. Whitman.

Argued November 26, 1946. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

W. J. *Krencewicz* and *Robert Grey Bushong,* for appellant.

*E. M. Biddle, Jr.,* with him *Arthur H. Hull,* for appellee.

OPINION BY MR. CHIEF JUSTICE MAXEY, January 6, 1947:

On April 19, 1943, the plaintiff instituted an action in trespass in Cumberland County against the defendant, a dentist, alleging that he had been negligent in extracting a tooth from the right side of her lower jaw and that in doing so he fractured the lower jaw, and that he then negligently failed to diagnose and treat the injury which he had caused to the lower jaw. It was alleged that as a result of his failure to use professional skill in extracting the tooth and in rendering subsequent treatment the injured jaw became infected, and plaintiff endured great pain and suffering and sustained a permanent deformity to the right side of her face under the lower jaw and a permanent disability to use her mouth. She itemized the expenses that resulted from the alleged want of care and skill and asked damages in the sum of $10,000. She retained as her chief counsel George F. Blewett, Esq., a member of the Philadelphia Bar. Mark E. Garber, Esq., of the Cumberland County Bar, "merely acted as local counsel" (quoting from the opinion of the court below).

The case was first listed by plaintiff's attorneys for trial at the December Term, 1943. It was not listed for trial at any of the four terms of court during 1944. It was listed for trial for the February Term, 1945, by

defendant's attorneys, and was again listed for trial at the May Term, 1945 by attorneys for both parties. It was listed at the September Term, 1945 and the December Term, 1945 by defendant's attorneys.

In February of 1945 the case was continued on motion of the defendant's attorney on the ground that Arthur H. Hull, Esq., chief counsel, was engaged at the time in an important rate case in Washington, D. C. In May, 1945 the case was continued at the instance of plaintiff's counsel with the understanding that it should be tried at the September Term. On May 17, 1945, attorney Blewett wrote to the plaintiff and told her that the case would be tried in September. Plaintiff's brother-in-law consulted another attorney and this fact apparently came to attorney Blewett's attention. He, on July 25, 1945, wrote to the plaintiff suggesting that she turn the case over to some other attorney. He also enclosed all the papers in the case. He advised her that the case would be tried in September, 1945. Plaintiff was unable to secure another attorney and her father called on attorney Blewett in August, 1945, at which time the latter again consented to represent the plaintiff. On September 24, 1945, the case was called for trial before Judge SHEELY, specially presiding, and attorney Blewett moved for a continuance on the ground that he was unable to secure attendance of certain essential witnesses. Judge SHEELY granted a continuance "on condition that the plaintiff pay all term costs, and with the direct understanding and order that the case must be disposed of at the December 1945 term of court, change of counsel or inability to secure witnesses will not be considered valid ground for a motion for continuance in December". On November 7, 1945, attorney Blewett wrote to plaintiff and stated that inasmuch as the papers sent to her July 25, 1945, had not been returned to him he assumed that plaintiff had engaged another attorney to try the case in December. He also stated that he considered himself no longer in

the case, and added that it was imperative that plaintiff's counsel be ready for trial at the December Term. Plaintiff requested her father to engage another attorney. The father, who was 76 years old, was ill and did not engage another attorney as requested. On November 20th Mr. Blewett again wrote to plaintiff advising her that the trial of the case had been set for December 10, 1945, and that it would be called for trial at that time. He again stated he would be unable to act as plaintiff's counsel.

A few days before December 10th W. J. Krencewicz, Esq., a member of the Schuylkill County bar, was retained by plaintiff as counsel. When on December 10, 1945, the case was called for trial, this attorney moved for a continuance on the ground that he had been engaged only a few days before and had not had sufficient time to make preparation for trial. Defendant's counsel opposed the continuance and the latter was denied. The case proceeded to trial before a jury. Plaintiff's counsel, after calling the defendant as for cross-examination, stated that he had no further witnesses, and said: "If the Court please, I am constrained at this time to beg the Court's indulgence in permitting us to have this case go over until tomorrow to permit us to present additional testimony. As I have said, I came here today not prepared to try this case; consequently, I have no witnesses." The Court replied: "I can't give you any indulgence until tomorrow. I don't think the county should be put to that extra expense." Attorney Krencewicz then said: "In view of that ruling, if your Honor please, we have no further witnesses today." Defendant's counsel then moved for a compulsory nonsuit. The Court granted the motion. The court later refused the motion to take off the nonsuit. This appeal followed.

The request for one day's continuance was certainly a modest one in view of the importance of this case and since nothing appears to indicate that the motion was

not made in good faith for the purpose of giving counsel an opportunity to secure an additional witness or witnesses, the motion should have been granted.

It is the contention of the plaintiff that the nonsuit should be taken off for the reason that the court in refusing to grant the continuances asked for on December 10, 1945, abused its discretion.

This court said in *Anderson v. Guerrein, etc., Co., et al.*, 346 Pa. 80, at 84: "An application for a continuance is an appeal to the discretion of the trial judge and his action in regard thereto will not be reversed unless such discretion is abused." (Citing cases).

We think that under the circumstances attendant upon this case on December 10, 1945, it was an abuse of discretion not to have granted the continuances. The plaintiff had notice only 32 days before the date fixed for trial that her attorney, Mr. Blewett, had withdrawn from the case. Under ordinary conditions such notice would have been ample, but here conditions were not ordinary.

First of all, the fact is well known to every judge and lawyer that a charge of malpractice is a difficult one to sustain, no matter how well-founded it may be. Part of this difficulty arises from the reluctance of members of the same profession as the defendant in a malpractice case to testify that the professional treatment given to the plaintiff by defendant was not skilful and not in accord with recognized methods of treatment appropriate to such cases. Under these circumstances 32 days time was scarcely sufficient for this plaintiff to secure competent counsel who would have sufficient time from his other engagements to thoroughly acquaint himself with plaintiff's case and to secure essential witnesses and to be adequately prepared for trial.

Second, the fact that plaintiff resided not in the county in which the case was to be tried but in another State, placed her at a disadvantage in securing counsel after her own counsel had withdrawn from her service.

When the action was instituted plaintiff was a temporary resident of Dauphin County; she later moved to Philadelphia, and in November, 1945, she was residing at Aberdeen, Maryland, where she was employed.

Third, the fact that attorney Blewett withdrew from this case without leave of court was an irregularity which the court below should have considered in passing on the motions for continuance on December 10th. It was the duty of attorney Blewett not to withdraw from the case without leave of court. If he applied to the court for such leave, it would have been proper for the court to make inquiry as to whether or not the plaintiff, who presumably never before had much experience with litigation, had been given due notice of the fact and whether or not she was so situated as to be able to secure competent counsel to prepare the case properly before it was called for trial. It is unfair to any litigant, and especially one not experienced in the ways of litigation, to be left without counsel 32 days before the trial of a case of great importance.

Plaintiff claims that she sustained grievious personal injuries of a permanent character by reason of defendant's lack of skill and care, and she is entitled to have her "day in court" to prove her allegations, if she can. She has a right to be represented by competent counsel and the latter should be given an opportunity to seek essential witnesses.

It is true, as we said in *Heller v. Cap. B. & T. Co., Trustee, et al.,* 330 Pa. 174, at 183, that "persons against whom actions may be threatened have claims to judicial considerations as well as those who threaten such actions; both are equally entitled to have the controversy between them promptly adjudicated while witnesses are still available and memories are undimmed by long intervening years", but we find nothing in this record which indicates that the continuances asked for would have been prejudicial to defendant. Presumably he is the only witness to his professional treatment of this plaintiff and it is not likely that his memory of the services

he rendered her is "dimmed". The refusal of the continuances was prejudicial to the plaintiff for it denied her an opportunity to have her case properly presented. She was forced to go to trial with an attorney who had been recently retained and who was unprepared. As a result a nonsuit was entered. Under the facts as they then appeared a due regard for the rights of the plaintiff and a humane consideration of the circumstances under which she was placed should have prompted the trial judge to grant the continuances requested.

The order of the court below refusing to take off the nonsuit is reversed. Costs to be paid by appellee.