## Fontanella v. Leonetti

W. *Walter Braham*, for plaintiffs.

*Gilbert D. Levine* and *Howard W. Lyons*, for defendants.

HENDERSON, J., July 12, 1963.—This case concerns primarily the complaints of the owners and operators of Super 18 Drive In Theater alleging that the lighting arrangements made by defendants at their golf course are such as to constitute a nuisance and ask that the same should be enjoined. Otto and Carmella Pieri are also plaintiffs; they live in a residential area located on a former main highway and in such a location that the Super 18 theater lies between their residence and defendants' commercial operation. We shall discuss first the relative interest of the two commercial establishments, each of which is using its land for an arti-

ficial purpose and each of which is engaged in the amusement business. The one requires a reasonable amount of light in order to maintain its operation while the other is best operated in almost complete darkness.

The general definition of a nuisance is:

"A nuisance is an unreasonable use of property which causes injury or damage to another in the legitimate enjoyment of his rights of person or property": 28 P. L. Encyc. 140, §1.

In order to establish a nuisance, plaintiffs must prove an unreasonable and substantial interference with the legitimate use and enjoyment of their property: Essick v. Shillam, 347 Pa. 373 (1943). Defendants do not take the position that plaintiffs are not making a legitimate use of their property but do allege that there has been no substantial interference with that use or unreasonable interference with that use. Defendants further take the position that there are no Pennsylvania cases which hold that an invasion by light alone of plaintiffs property is sufficient for the finding of a nuisance and the granting of an injunction.

On this position, plaintiffs cite Kohr v. Weber, 402 Pa. 63 (1960), which is a case involving the night time operation of a drag strip or race track in which the majority of the court approved the granting of an injunction against this operation. However, a reading of the case would indicate that the injunction was granted and affirmed primarily because of excessive noise resulting from defendants' operation, rather than because of an invasion by light. This can be seen by the statement of Mr. Justice Musmanno on page 68 as follows:

"One of the most poignant utterances in all literature is the tragic lament of Macbeth that he had murdered sleep. To dangle restful sleep before a desperately exhausted mortal and never allow him to taste of its reviving and refreshing juices constitutes one of the

most torturesome experiences of mankind. Whether the deprivation is caused by medieval 'third degree' or through unbearable noises nerve-gratingly projected from an ultra-modern drag strip is immaterial. The wounds inflicted to the nervous system are equally damaging to the physical structure."

In its opinion the court quoted from Anderson v. Guerrin Sky-Way Amusement Company, 346 Pa. 80, in which the court affirmed the enjoining the operation of an open air motion picture theater; this again on the basis of noise.

Plaintiffs cite cases involving contamination of water supply and so forth but nowhere do we find a Pennsylvania case saying that invasion by light alone is actionable.

Both plaintiffs and defendants in their briefs cite the Oregon case of Amphitheaters, Inc. v. Portland Meadows, 184 Ore. 336, 198 P. 2d 847; 5 A. L. R. 2d 690 (1948). The A. L. R. citation sets forth the general rule on page 706 as follows:

"The private nuisance light cases, considered as a whole, seem to warrant the generalization that if the intensity of light shining from adjoining land is strong enough to seriously disturb a person of ordinary sensibilities or interfere with an occupation which is no more than ordinarily susceptible to light, it is a nuisance; if not, there is no cause of action. The courts will not afford protection to hypersensitive individuals or industries."

The Amphitheater case held as a matter of law that the outdoor motion picture theater could not be protected from lights from defendants' race track because it is a business which is of a peculiarly delicate character and sensitivity to light.

Defendants point to the similarity in the fact situations presented by the Amphitheater case and the case at bar in that both parties are in the amusement busi-

ness, in that one requires darkness and the other light for good business operation, in that in each case the only invasion complained of is by light from the other enterprise. In deciding this case the Oregon Supreme Court analyzed a great number of English and American cases dealing with this subject at some length and found that in each case where an activity was held to be a nuisance, the activity was something which was either inherently harmful or an unreasonable and substantial interference with the ordinary use or enjoyment of property, and that court took the position that no one can contend that light is inherently harmful to persons in the ordinary enjoyment of property. The court then went on to say that, page 349:

"No action will lie for a nuisance in respect of damage which, even though substantial, is due solely to the fact that the plaintiff is abnormally sensitive to deleterious influences, or uses his land for some purpose which requires exceptional freedom from any such influences . . ." and cited as authority Joyce, Law of Nuisance, §26; Prosser on Torts, p. 559 and note p. 67; 39 Am. Jur. 424, Nuisances; 46 C. J. 682, and many other citations.

In summary the court said:

". . . We have found no case in which it has been held that light alone constitutes a nuisance merely because it damaged one who was abnormally sensitive or whose use of his land was of a peculiarly delicate and sensitive character.

"It is not our intention to decide the case upon authority alone, divorced from reason or public policy. The photographic evidence discloses that the properties of the respective parties are not in a residential district, and in fact are outside the city limits of Portland, and lie adjacent to a considerable amount of unimproved land. Neither party can claim any greater social utility than the other. Both were in process of

construction at the same time, and the case should not be decided upon the basis of the priority of occupation. The case differs fundamentally from other cases, all typical cases of nuisance, in that light is not a noxious, but is, in general, a highly beneficial element. The development of parks and playgrounds equipped for the enjoyment of the working public, whose recreation is necessarily taken after working hours, and frequently after dark, is a significant phenomenon in thousands of urban communities. The court takes judicial knowledge that many lighted parks and fields are located adjacent to residential property and must to some extent interfere with the full enjoyment of darkness (if desired), by the residents.

"We do not say that the shedding of light upon another's property may never under any conditions become a nuisance, but we do say that extreme caution must be employed in applying any such legal theory. The conditions of modern city life impose upon the city dweller and his property many burdens more severe than that of light reflected upon him or it": 184 Ore. at 361-62.

We cannot help but agree with the court's basic philosophy and reasoning, particularly in view of the type of area and location in which the two businesses in the case at bar are found to be operating. Our feeling in this regard is strengthened in the case at bar by reason of the fact that plaintiffs have not proven, at least by way of damages, an unreasonable and substantial interference with the ordinary enjoyment of their property.

Plaintiffs' brief states that the A. L. R. annotation following the Amphitheater case as found on page 88 of the supplement service cites the case of Kohr v. Weber, supra, as an authority for the proposition that the lights from the drag strip were a nuisance in fact. In view of the court's holding that the courts will not

afford protection to hypersensitive industries and since the case at bar concerns a business operation which is hypersensitive to light, we cannot accept Kohr v. Weber as authority for the general and unconditional proposition set forth.

The court feels that defendants' position in this regard is strengthened by such cases as Pennsylvania Co. v. Sun Co., 290 Pa. 404 (1927), in which the court said in talking about granting equitable relief for injury from injurious invasion of property, "by injury is meant something affecting the capacity of the property for ordinary use. . . ." It would appear from such cases as this that if the court were discussing an extraordinary use of property such as we have in the case at bar where the business operation is extrasensitive to even ordinary lighting conditions, they would have held that such an invasion by light alone is not a compensable injury.

Plaintiff cites in his brief two sections of the Restatement of Torts as follows:

"An intentional invasion of another's interest in the use and enjoyment of land is unreasonable under the rule stated in §822, unless the utility of the actor's conduct outweighs the gravity of the harm": Restatement Torts §826, page 241.

"Under the rules stated in §§826-828, an intentional invasion of another's interest in the use and enjoyment of land is unreasonable and the actor is liable when the harm is substantial and it would be practicable for the actor to avoid the harm in whole or in part without undue hardship": Restatement, Torts §830, p. 258.

This court agrees that these statements are proper statements of the law of the Commonwealth of Pennsylvania but finds that in the fact situation here involved, they are not applicable in that we have not found defendants' invasion by light alone to be an unreasonable invasion of plaintiffs' land. However, de-

fendants in their testimony have agreed and stated that they are willing to use shields on the offending lights as recommended by Mr. Egeler and the court finds that such action on the part of the defendants is equitable. We shall, therefore, direct that defendants take this action.

With regard to the claim of Otto and Carmella Pieri, we find that plaintiffs Pieri, living within this commercial and industrial area, are bound by the law as set forth in Sprout v. Levinson, 298 Pa. 400 (1930), to the effect that:

"The mere fact that the adjoiner is subjected to some annoyances furnishes no ground for relief where he resides in a commercial district, for he must bear the inconvenience arising from his location just as he enjoys the benefits: (cases cited). A dweller therein cannot expect the same peace and quiet as if surrounded by residences alone: (cases cited)."

Plaintiffs Pieri are also bound by the statement of the law as set forth in Burke v. Hollinger, 296 Pa. 510 (1929), where the court held that:

"It is apparent that when a residential district . . . borders on a commercial district, it must bear the inevitable consequences of being located so close to a district of that character."

Since the drive-in theater is located between the home of plaintiffs Peri and defendants' operation, it would appear that the noises from the theater operation would be at least as destructive of their peace and quiet and restful atmosphere, if not more so, than the lights emanating from defendants' operation.

## Conclusions of Law

1. Defendants' use of their land for a lighted pitch and putt golf course in an unzoned area where other land in the immediate vicinity is used for commercial and industrial purposes is not unreasonable.

2. An invasion of one's property by light alone emanating from the property of another is not such an invasion of a property right as to call for either injunctive relief or damages in those situations where the activity conducted on the land invaded by light alone is such an activity as to be hypersensitive to light, particularly in those circumstances where an ordinary business activity would not be injured by such an invasion, and where the land lies in a commercial and industrial area.

3. Defendants' use of lights, as that use is found to exist in this case, does not constitute a private nuisance.

4. Plaintiffs' proof with regard to financial loss or injury is insufficient, inadequate, and speculative.

## Decree of Court

Now, this July 12, 1963, plaintiffs' petition is hereby dismissed with costs assessed to the plaintiffs.

However, in accordance with defendants' testimony, defendants shall cause to be installed certain light shields as follows: . . .

## Opinion Sur Exceptions

HENDERSON, J., March 17, 1964.—This matter is before the court on exceptions taken by both plaintiffs and defendants to the decree nisi dated July 12, 1963. Defendants' exceptions apply only to the second portion of the order of the court while plaintiffs take exceptions to 14 of the 25 findings of fact, each of the 4 conclusions of law, the court's refusal to agree with 4 of the plaintiffs' requested conclusions of law, and with the first portion of the decree of court.

This case grows out of plaintiffs' petition for an injunction in which they asked that defendants be enjoined from maintaining lights on their golf course in such a fashion as to permit the lights to shine upon plaintiffs' movie screen and shine in the eyes of patrons

of plaintiffs while watching the movie. In our previous opinion we dismissed plaintiffs' petition but directed that defendant install certain light shields in accordance with the court's understanding of defendants' testimony concerning their willingness to do so. There is no question but what the form of the decree nisi is incorrect and must be changed. . . .

Plaintiffs' exceptions to findings of fact numbers 15, 16 and 25 go to the matter of whether or not there was substantial injury proven. They make a heated argument with reference to this but in doing so, completely misread the findings. Plaintiffs' brief at page 22, after reciting plaintiffs' evidence concerning gross income to plaintiffs over the previous years, says: "It is difficult to understand how a court would find in these circumstances, that plaintiffs have suffered no substantial loss." Plaintiffs, of course, in order to make their argument effective ignore that portion of the finding which states that plaintiffs' proof failed to show that they suffered *substantial* damage or injury *by reason of defendants' lights*. The findings of fact do not decide that plaintiffs' gross income has not been reduced between 1961 and the time of the hearing, but rather the findings of fact determine that plaintiffs have not proven that this loss or decline of income results from actions of defendants. A review of the testimony again confirms this. However, as is pointed out in defendants' brief, a portion of the 15th finding is wrong and that finding is restated as follows:

"15. Even though plaintiffs' gross receipts were reduced after July 10, 1962, plaintiffs' percentage of return of film cost was increased to such an extent that it exceeded that of the same period in the four preceding years."

Nowhere do we find nor could anyone find on this testimony that plaintiffs' gross income has not been reduced. However, as has been said, a complete review

of the testimony convinces us that plaintiffs have not shown this to be the fault of defendants. There are many situations and conditions which may have caused this decline in plaintiffs' revenue concerning which no testimony has been introduced, and in order to make the findings pressed for by plaintiffs in this regard, the court would be required to ignore all those circumstances which ordinarily would affect the patronage at a drive-in movie theater and determine the question solely on the basis of the fact that defendants installed lights during this period of time. We find that plaintiffs' proof in this regard is not sufficiently definite as to permit the court to make such a finding. . . .

Plaintiffs have asked for a finding of fact with regard to the lights of defendants' operation shining in the eyes of plaintiffs' patrons while they were watching the films. Plaintiffs' allegations are that they have been injured two ways by defendants' light, first in that the lights substantially interfere with the quality of the picture on their screen, and this has been found not to be a fact in the 11th finding of fact. The second allegation is that defendants' lights resulted in damage to plaintiffs by reason of the fact that the lights shine into the eyes of plaintiffs' patrons. Certainly when the lights were first installed and prior to the original adjustment thereof, we can find that the lights shone into the eyes of plaintiffs' patrons in such a direct and blinding fashion as to result in substantial damage to plaintiffs. However, immediately upon objections being made to defendants concerning this, the lights were turned off, the lights were readjusted, and it is hereby found as an additional fact that, even though some of defendants' lights are within the view of plaintiffs' patrons while they are attending the theater, this does not result in such substantial interference with the patrons' viewing of plaintiffs' movies as to warrant court interference. . . .

As we have previously said, the decree nisi in its present form is incorrect and cannot stand. Defendants' position is that the court has found defendants' actions do not result in a nuisance in fact and yet, in spite of this, the decree actually gives plaintiffs' injunctive relief. Defendants further take the position that even though they have indicated a willingness to place shields on numerous of their lights, the decree nisi goes far beyond anything that defendants may have agreed to in this respect. Defendants also state that they had agreed to turn the lights on two poles in such a fashion as to maybe afford some additional relief to plaintiffs but that under the present order they are afraid to make any changes in those lights.

Plaintiffs' exceptions to the court order are basically the same in that the effect of the order was to grant them some injunctive relief while still rejecting their position and while assessing the costs of the case against them.

Both at argument and in their brief, plaintiffs have made a lengthy argument that they are entitled to some kind of injunctive relief by reason of judicial admissions of defendants in the testimony to the effect that defendants would have no objection to the erection and installation of certain light shields about their lights as those shields were recommended by the testimony of Carl E. Egeler, plaintiffs' principal witness. Plaintiffs' position is that defendants' testimony to the effect that they have no objection to the said shields amounts to such a judicial admission as to bind them to the requirement that they erect such shields, particularly in view of the fact that during the testimony the court accepted defendants' testimony in that fashion and shut off some further testimony concerning this issue, based on defendants' agreement. Plaintiffs' contention is that judicial admissions may arise out of the testimony of the party as well as from the plead-

ings, that rights of the parties such as these in question may be stipulated away, and that the effect of a judicial admission such as this would render further evidence on the point from the one receiving the benefit of the admission unnecessary. In answer thereto, defendants take the position that a judicial admission can create no cause of action where the facts established by the judicial admission give no rise to a cause of action.

We accept at face value defendant's statement from the witness stand, to the effect that he had no objections to installing light shields and reflectors in accordance with the recommendations of Carl E. Egeler, and find that they amount to a judicial admission to which defendant must be held. This matter is before the court in its equitable jurisdiction and there is no question in the court's mind but that equity can only be done by requiring defendants to take this general type action. This is completely consistent with the court's discussion in its prior opinion.

We shall, therefore, enter a new order as follows:

### Order of Court

Now, March 17, 1964, it is hereby ordered, adjudged and decreed that defendants shall install shields on or about the lights on poles numbered 1, 2, 3, 5, 8, and 10, as those poles are identified on plaintiffs' exhibit no. 6 in evidence, as recommended by Carl E. Egeler on that exhibit. It is further ordered that this court shall maintain continuing jurisdiction over this matter and each party shall bear its own costs.