Tobash, Appellant, *v.* Jones.

206

Argued May 27, 1965. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*W. J. Krencewicz,* with him *Edward J. Ozorowski,* for appellant.

*Lawrence Brown,* with him *Duffy, McTighe & Mc-Elhone,* for appellee.

OPINION BY MR. JUSTICE JONES, October 13, 1965:

From a judgment entered on a jury verdict in favor of a neurosurgeon in a medical malpractice action this appeal, wherein a new trial is sought, was taken.

Edward Tobash (Tobash) instituted a trespass action against Dr. Robert K. Jones in the Court of Common Pleas of Montgomery County alleging particularly that Dr. Jones was negligent in that he (a) carelessly and incorrectly gave a postoperative diagnosis of a malignant spinal tumor and (b) unnecessarily and in an unsurgeon-like manner damaged portions of Tobash' spinal cord.

Inasmuch as the grounds upon which Tobash seeks a new trial relate solely to alleged errors on the part of the trial court in refusing a continuance, in ruling as to the admissibility of certain testimony and in cer-

tain of its instructions to the jury, for the purpose of this appeal only a brief resume of the basic facts is necessary.

Shortly before December 14, 1957, Tobash, allegedly then in good health, began suffering a low backache the increasing intensity of which and its side effects caused him to be admitted, on December 14, 1957, to Lankenau Hospital, Montgomery County. At that hospital he came under the service of a general surgeon who, after an examination, turned him over to Dr. Jones, a certified neurosurgeon. After performing a myelogram, which indicated a partial block of the spinal cord, Dr. Jones performed a laminectomy involving the removal of the bony posterior arches of three thoracic vertebrae. During the course of that operation, Dr. Jones found the spinal cord "quite abnormal", swollen to one and one-half times its normal size, not pulsating normally and pale.[1] Dr. Jones made an excision into the cord itself and, in so doing, discovered some tissue which he described as having "a mottled hemorrhagic appearance" and he then concluded, from a gross examination, that it was malignant. Dr. Jones excised a section of nerve tissue,—2 mm. x 3 mm. x 4 mm. in dimensions—for biopsy purposes. The biopsy specimen was examined by a pathologist at Lankenau Hospital who later reported that the specimen "resembled" reticulum cell sarcoma which finding was later confirmed by a pathologist at the University of Pennsylvania Hospital.

Tobash remained at the hospital until January 2, 1958, during which time he was given physical therapy and one treatment of x-ray therapy. Tobash, on his own volition, then went to Walter Reed Hospital, Washington, D. C. Upon examination of the biopsy slides taken at Lankenau Hospital and making other tests, the Walter Reed pathologists found Tobash' condition

---

[1] Record pp. 574, 575.

to be "transverse myelopathy", a pathological condition which could be either cancerous or non-cancerous.

Tobash was discharged from Walter Reed Hospital on May 8, 1958. It is now contended that Tobash can walk only with the aid of canes, his right leg functions improperly, his left leg is weak, his bladder is impaired, he is suffering pain in the chest and legs and his sexual power has been destroyed. It was Tobash' theory at trial—supported by a medical witness—that "the excision of the biopsy specimen from the fasciculus gracilis area of the spinal cord" caused a "traumatic reaction" which caused the cord to be swollen and which thus indirectly affected "the perambutal column of the spinal cord, which affects mobility"[2] and bladder function, that Tobash' original condition was "transverse myelitis" or "myelopathy" and that the biopsy caused the present disability.

After a trial before a court and jury a verdict was returned in favor of Dr. Jones, Tobash' motion for a new trial was denied and judgment was entered on the verdict. Six reasons are assigned for a new trial.

Tobash originally engaged attorney James McCrudden of Philadelphia as his counsel and attorney McCrudden engaged, as local counsel in Montgomery County, attorney Edward Ozorowski.

The record shows that this trespass action was instituted on December 7, 1959—seven days before the statute of limitations would have run—the complaint was filed seven months thereafter and only after Tobash had been ruled to file such complaint, the case did not appear on the trial list until November 6, 1962, when it was ordered on by Dr. Jones' counsel, and the case appeared on several lists thereafter including the November, 1963, trial list. When the case was called for trial in November 1963 it was continued on motion of

---

[2] Quotations are from Tobash' brief, pp. 6, 7.

Tobash' counsel, over Dr. Jones' counsel's objection, with the understanding the case would be tried in January 1964. The case was listed for trial on January 20, 1964. Previous to that on two calls of the January list—January 10 and 17—Tobash' counsel had informed the court that they were ready for trial. On the morning set for commencement of the trial, attorney Krencewicz of the Schuylkill County Bar appeared and asked for a continuance on the ground he had been retained "a little more than a week before" to try the case and had had no opportunity to prepare for the trial. The court refused to continue the trial. Such refusal is alleged as error.

The fact is that Tobash had engaged attorney Krencewicz' services not "a little more than a week before" but approximately six weeks prior to the trial[3] and that attorney McCrudden had attempted to withdraw from the case at least six weeks before the trial. Moreover, Tobash' sole medical witness, Dr. Dorsavage, had a copy of Dr. Jones' deposition and hospital charts a month before the trial. Attorney McCrudden, who had prepared the complaint and "lived" with this case for over four years, sat with and assisted attorney Krencewicz throughout the trial.

In assigning the refusal of a continuance as error, Tobash relies on *Bierstein v. Whitman,* 355 Pa. 515, 50 A. 2d 334. An examination of *Bierstein* leads us to the conclusion that the circumstances in *Bierstein* were highly unusual and that "the only true similarity between this case and Bierstein is the identity of plaintiff's counsel [attorney Krencewicz] in each."[4] In *Bierstein,* it is clear counsel was engaged "only a few days before the trial"; in the case at bar, it is clear counsel was engaged approximately a month and one-

---

[3] As appears in correspondence attached to Dr. Jones' brief in accordance with court order of May 5, 1965.

[4] Appellee's brief, p. 10.

half before the trial. In *Bierstein,* counsel did have only a few days to prepare for trial; in the case at bar, the medical witness—from Schuylkill County and obviously selected by attorney Krencewicz—had a month for the study of the deposition of Dr. Jones and the hospital charts, a clear indication that preparation had started a month before trial. Moreover, an examination of the instant record reveals that Tobash' trial counsel was thoroughly prepared.[5] Moreover, in *Bierstein,* counsel was *forced* to trial and not even given until the next day to secure witnesses: *Yoder v. T. F. Scholes, Inc.,* 404 Pa. 242, 247, 173 A. 2d 120.

The matter of a continuance is within the discretion of the trial court and only where such discretion has been abused will the refusal of a continuance be reversed: *Anderson v. Guerrein Sky-Way Amusement Co.,* 346 Pa. 80, 29 A. 2d 682; *Brookside D. P. Corporation v. Monarch Wine Co.,* 367 Pa. 8, 79 A. 2d 242. The present record reflects no abuse of the trial court's discretion; on the contrary, under the circumstances revealed by this record, a continuance was properly refused.

At trial, as a witness for Dr. Jones, a Dr. Groff was called and asked: "Q. Tell us what would be the correct procedure on the facts of this case having heard Dr. Jones testify as to his neurological findings and having the chart there, and so forth."

To this Tobash' counsel objected on the ground that it was not a proper hypothetical question because it did not specify the facts on which the witness' testimony would be based and that Dr. Groff may or may not have heard all the testimony. The trial court, observing that Dr. Groff had been present all through Dr. Jones' testimony, overruled the objection.

---

[5] As appellee points out, Tobash' counsel's opening remarks encompassed 26 pages of the record, a bizarre performance for an unprepared counsel.

The thrust of Tobash' contention is that the question did not pinpoint the "facts" assumed to be true, that there was no showing Dr. Groff had heard *all* the testimony relating to "the facts of this case" and, as evidence that Dr. Groff did not hear *accurately* Dr. Jones' testimony, Tobash' counsel notes that Dr. Groff said "The surface of [the spinal cord] was *blanched,* as Dr. Jones has described it" whereas Dr. Jones said the cord was *"pale".* (Emphasis supplied).

Dr. Jones' counsel argues that Dr. Groff never gave his opinion in response to the question to which objection was made and, therefore, the ruling of the court is of no consequence. We do not so read the record.

While the question to Dr. Groff could have been more artistically presented, it is clear that Dr. Groff was asked to express an expert opinion on the correct surgical procedure to be followed based upon an assumption of the truth of the facts testified to by Dr. Jones—which Dr. Groff had heard in the courtroom—and the facts set forth on the chart. The expression of an opinion by Dr. Groff in such posture was proper. In *Commonwealth v. Adams,* 187 Pa. Superior Ct. 611, 616, 145 A. 2d 729, that court, relying on *Yardley v. Cuthbertson,* 108 Pa. 395, 450-451, 1 A. 765, *Bowles v. Pittsburgh,* 343 Pa. 39, 46, 20 A. 2d 783 and *Kelly v. Martino,* 375 Pa. 244, 246, 99 A. 2d 901, approved the action of a trial court, in the exercise of its discretion, which permitted the expression of an expert opinion based "upon a defined portion of the testimony given in behalf of one of the parties" and made known to the expert witness by *hearing* such testimony. As Mr. Justice MUSMANNO stated in *Kelly,* supra: "The expert does not warrant the accuracy of the facts; he only assumes responsibility for the conclusion he draws from the assumed facts. If the jury accepts the foundation of fact it then decides what credence it will impart to the [expert]. . . . If the jury detects fissures of unde-

pendability in [the] foundation, then the expert opinion necessarily falls of its own weight" (375 Pa. at 246). The court below did not abuse its discretion in permitting response by Dr. Groff to this question.

Dr. Groff was also asked this question: "Q. In view of Dr. Jones' clinical findings with regard to the neurological deficits, prior to operation, and assuming that the patient today has asymmetrical deficits with spasticity, particularly of the right leg, what is your opinion of a statement that the removal of a fragment of tissue three millimeters by two millimeters by three millimeters is the sole cause of the patient's present disability?"

An objection to this question was overruled. In answering, Dr. Groff testified that the biopsy had no causal relationship with the neurological picture depicted of Tobash' condition at trial. Dr. Jones had given a long explanation of his clinical findings, diagnostic techniques and operative procedure which Dr. Groff heard. The question to the doctor asked him to assume not only the truth of what Dr. Jones testified as to his clinical findings but also to assume that Tobash had "asymmetrical deficits with spasticity"— as testified to by Tobash—and from such testimony and assumption of facts to draw a conclusion. In our view, the question was proper and the responsive testimony was clearly admissible.

Lastly, Dr. Groff testified that he had had a pretrial discussion with Dr. Jones. From such testimony, Tobash' counsel argues that such out-of-court discussion established the "facts" on which Dr. Groff's opinion was based. This objection finds no support either in law or common sense. That Dr. Jones and Dr. Groff discussed the case, even Dr. Groff's testimony, does not disqualify Dr. Groff from testifying. Dr. Groff, while Dr. Jones testified, sat in the courtroom and heard such testimony. See *Kelly v. Martino*, 375 Pa. 244, 99 A. 2d

901; *Yardley v. Cuthbertson,* 108 Pa. 395, 450-51, 1 A. 765; *Commonwealth v. Adams,* 187 Pa. Superior Ct. 611, 145 A. 2d 729.

The court, inter alia, told the jury: "A cause would be remote and not proximate if the injury complained of was an unlikely or improbable consequence thereof. Thus, where an alleged negligent act is merely a circumstance and not a proximate cause of an accident, there can be no recovery. From this you can see that the real test is whether the damages of the plaintiff are the natural and probable consequence of any negligent act of the defendant, *such as a consequence as, under the surrounding circumstances of the case, might and ought to have been foreseen by the defendant as likely to flow from his act.* The test is not whether the injury might have resulted from the negligence, but whether it probably would have resulted from it. You must first determine whether the defendant was negligent and whether that negligence was the proximate cause of the injury, damage, or loss, if any, to the plaintiff." (Emphasis supplied). Although Tobash' counsel took only a general exception to the charge, he now claims that the trial court committed fundamental error in the instructions given on proximate cause.

Relying on *Dahlstrom v. Shrum,* 368 Pa. 423, 428, 429, 84 A. 2d 289, *Vereb v. Markowitz,* 379 Pa. 344, 349, 108 A. 2d 774 and the Restatement, Torts, §435, Tobash' counsel well and correctly argues that foreseeability, although a factor in negligence, is not a factor in determining proximate or legal cause. It is then urged that the trial court in the case at bar made foreseeability the sole test in determining proximate cause. The difficulty with this contention is that it points only to an isolated portion of the court's instructions and, when the charge of the court is read in its entirety, it is clear beyond any question that the jury were not misled on the appropriate weight to be

given foreseeability in determining negligence nor the necessity of finding that the "final injurious consequence" flowed from the "first wrongful cause". See *Anderson v. Bushong Pontiac Co.,* 404 Pa. 382, 389, 171 A. 2d 771. Moreover, viewing the instructions as a whole, it is evident that the trial court did not instruct the jury that foreseeability is a factor in determining proximate cause.

Tobash' counsel requested the court to charge: "3. If you find as a fact that Dr. Jones knew or should have known that removing the portion of the nerve tissue described by him for the purpose of biopsy would necessarily do irreparable damage to the spinal cord and if you further find as a fact that there was no compelling necessity to remove a portion of the nerve tissue for diagnostic purposes, you may find Dr. Jones guilty of negligence." The court refused to so charge; its refusal is now assigned as error.

The requested point for charge would require that the court instruct the jury that *necessity* for the excision of the tissue for biopsy purposes would furnish the *sole* criterion upon which the jury was to determine the propriety of Dr. Jones' action in excising the tissue. Such was not the issue presented nor was *necessity* the *sole* criterion. The court below well stated: "The issue was . . . whether or not the excision of such tissue for histological purposes of an infiltrating type tumor was a proper procedure. It was important that Dr. Jones perform the biopsy in order to confirm his tentative diagnosis of cancer. Dr. Jones was not certain that this was [Tobash'] problem, and a diagnosis from a study of the tissue was needed in order to determine what methods were to be used in the treating of [Tobash'] malady.". Our review of the record clearly supports the trial court's refusal of this point for charge; it was certainly inapplicable in the case at

bar. *(Grzywacz v. Meszaros,* 417 Pa. 51, 52, 208 A. 2d 237).[6]

It is urged that the trial court erred when it instructed the jury: "Now if you find that under that evidence there are two lines of belief, if you find that there is competent authority, although divided, competent medical authority, subscribed to by reputable, respectable and reasonable medical experts, and if you find that Dr. Jones followed one of those lines in performing this laminectomy and in excising that tissue from the spinal cord of Mr. Tobash, then you couldn't say he was negligent for following any of the recognized experts in the field."

Tobash contends that the exposition of this doctrine was inapplicable to the facts and issues in the case at bar. A review of the record reveals that both Dr. Jones[7] and Dr. Groff testified that the excision of a small fragment of tissue from the spinal cord for histological purposes in the case of an infiltrating type tumor was proper surgical procedure. Dr. Dorsavage[8], called on behalf of Tobash, testified that it was improper surgical procedure to excise such tissue for biopsy purposes under the circumstances. Such testimony presented two diametrically opposed views between competent medical authorities as to the appropriate procedure to be followed.

The real crux of this case is whether the excision of tissue from the spinal cord for biopsy purposes con-

---

[6] Cf. The trial court's qualified affirmation of the fifth point for charge requested by Tobash' counsel which correctly presented to the jury the basic issue in the case at bar.

[7] Dr. Groff, a certified neurosurgeon, was not only a professor of but the chief of neurosurgery at the University of Pennsylvania and Graduate Hospitals of Philadelphia.

[8] Dr. Dorsavage, a general surgeon but not a neurosurgeon, had never performed a laminectomy but had studied anatomy, particularly the spinal cord and central nervous system.

stituted negligent conduct on the part of Dr. Jones. The record presented conflicting views on the propriety of such procedure. From our examination of the court's instructions we are convinced that, if the court erred at all, it was in the extension of more favorable instructions on Tobash' side than the factual situation or the applicable law warranted; certainly, the instructions now complained of in no manner harmed or prejudiced the position of Tobash.

Reading this record we cannot help be reminded of that which the Superior Court, speaking through Judge (later President Judge) KELLER, said in *Remley v. Plummer*, 79 Pa. Superior Ct. 117: "The question actually passed upon by the jury was not whether the [two doctors] in their handling of the case, had been guilty of negligence in not following a well-recognized and established mode of treatment, but rather, which of two methods, both having their respective advocates and followers of respectable authority, was the safer and better from a surgical standpoint. In other words, in the face of conflicting reliable expert evidence as to what was the proper course to be pursued by the surgeon in charge of the case, twelve laymen, with no knowledge of medicine and surgery were called upon to decide a disputed scientific medical and surgical question upon which eleven physicians and surgeons of standing and experience could not agree. . . ." The jury in the case at bar was called upon to decide, in the face of conflicting and competent medical evidence, the propriety of the procedure followed by Dr. Jones in excising this tissue. Our reaction is that the instructions complained of permitted an inquiry by the jury unwarranted by the applicable law but that, instead of being harmed, Tobash was favored by such instructions.

Although not included in the statement of questions involved, Tobash lastly argued that Tobash did not consent to the excision of the tissue by Dr. Jones.

218

From our examination of the record we find no merit in such argument.

An objective view of the record convinces us that, had Dr. Jones not excised this tissue for biopsy or histological purposes, he might well have been negligent. In *Smith v. Yohe*, 412 Pa. 94, 105, 194 A. 2d 167, we said: "If a physician, as an aid to his diagnosis, i.e., his judgment, does not avail himself of the scientific means and facilities open to him for the collection of the best factual data upon which to arrive at his diagnosis, the result is not an error of judgment but negligence in failing to secure an adequate factual basis upon which to support his diagnosis or judgment."

Judgment affirmed.

Mr. Justice COHEN and Mr. Justice ROBERTS concur in the result.

Mr. Justice MUSMANNO and Mr. Justice EAGEN dissent.