Thomas F. Roche, Petitioner *v.* Commonwealth of Pennsylvania, State Board of Funeral Directors, Respondents.

Submitted on briefs, September 18, 1981, to Judges BLATT, CRAIG and MACPHAIL, sitting as a panel of three.

*Michael A. Raffaele, ReDavid, Raffaele & Pietrangelo,* for petitioner.

*James J. Kutz,* Chief Counsel, Bureau of Professional and Occupational Affairs, with him *David F. Phifer,* General Counsel for Department of State, and

*Marjoree Aderson,* Counsel for State Board of Funeral Directors, for respondent.

OPINION BY JUDGE BLATT, December 10, 1981:

This is an appeal from the July 21, 1980 order of the Pennsylvania State Board of Funeral Directors (Board) which affirmed its October 27, 1977 order revoking the license of Thomas F. Roche (Roche) to practice as a funeral director.

A hearing was held on December 6, 1973 to hear evidence on charges that Roche had acted improperly with regard to the arrangements involved in a funeral which he conducted. It was charged that Roche had not submitted a signed itemized statement of expenses to the family prior to the funeral, as required; that he had submitted a false funeral bill to the estate which had been inflated to cover air travel expenses incurred by the family at the time of the funeral; that he had then failed to reimburse two of the family members concerned; and that he had failed to pay for initial arrangements performed by a funeral home located in Florida where the decedent had died, which expense had been incorporated into his own bill.

Almost four years later, on October 27, 1977, the Board issued its adjudication and order revoking Roche's license pursuant to Sections 11(5) and (6) of the Funeral Director Law.[1] In November of 1977,

---

[1] Section 11(5) and (6) of the Funeral Director Law, Act of January 14, 1952, P.L. (1951) 1898, *as amended,* 63 P.S. §479.11(5) and (6) provides:

The board, by a majority vote thereof, may refuse to grant, refuse to renew, suspend or revoke a license of any applicant or licensee, whether originally granted under this act or any prior act, for the following reasons:

. . . .

(5) Gross incompetency, negligence or misconduct in the carrying on of the profession.

(6) Violation of or non-compliance with the provisions of this act or the rules and regulations of the board.

Roche filed a petition for review with this Court and a petition for rehearing and/or reconsideration with the Board. On January 3, 1978, the Board denied the request for a rehearing but granted the request for reconsideration, whereupon Roche withdrew the petition for review before this Court. Reconsideration hearings, limited in scope to reconsideration of "mitigating ciricumstances," were held by the Board in April and August of 1979. On July 21, 1980, after Roche had instituted an action in mandamus in this Court to compel the Board to act, the Board issued an order affirming its decision to revoke Roche's license. This appeal then followed.

Roche contends that the Board abused its discretion in revoking his license and, further, that he was denied due process of law by being compelled to proceed without counsel, by an impermissible commingling of the prosecutory and adjudicatory functions at the December, 1973 hearing and by the Board's failure to issue its adjudication and order until nearly four years after the original hearing.

Roche appeared without counsel at the December, 1973 hearing under the belief that the hearing was to be postponed because of the hospitalization of the complainant's attorney. When he arrived at the hearing, however, he was informed that the hearing was to proceed and that he could have a one-hour continuance in which to secure the presence of his attorney. When he was unable to contact his attorney, he advised the Board that he did not wish to proceed without counsel, but the hearing proceeded and he filed no formal complaint, trying to represent himself as well as he could.

The Board contends that the citation and the notice of hearing provided Roche with notice of the purpose and possible outcome of the hearing and of his right to be represented by counsel and, further, that Roche had indicated, in response to questions put to him at

the outset of the hearing, that his ultimate decision to proceed without counsel was not due to duress or pressure exerted by the Board. While these assertions of the Board are factually correct, they must be examined in light of the hearing record as a whole, which indi-, cated that Roche's understanding of the nature and dimensions of the hearing were altered by information given him by the secretary of the complainant's attorney. After being sworn, he stated that, at the behest of his own attorney, he had contacted this secretary, and had spoken with her three times during the week preceding the hearing. He further stated that on the day before the hearing, she had told him that the assistant attorney general of the state had called and said that, although the complainant's attorney had postponed the hearing, Roche must still appear. In view of the fact that at least one of the two informal hearings scheduled during the preceding year had not transpired,[2] it is not surprising that, at the time of his arrival at this 1973 hearing, Roche believed that, due to the turn of events, he was now appearing for another informal hearing. We believe, therefore, his appearance without counsel was not an arbitrary decision on his part but rather, was the result of misinformation he received while diligently attempting to determine whether or not the then scheduled hearing would be affected by the hospitalization of the attorney for the complainant.[3] He was informed at the hearing that "the Board's position now is that we are willing to continue this hearing for one hour to give [Roche's attorney] an opportunity to be here. Now, if he wants to make any formal request, it's up to him to be here to make such formal request."[4]

---

[2] It is unclear from the record before us whether or not the informal hearing scheduled for December, 1972 took place.

[3] *See* Record at p. 10a.

[4] *Id.*

It is well-settled that the power to grant or refuse a continuance is an inherent power of an administrative agency subject to review only upon a clear showing of abuse of discretion, "considering chiefly whether the interests of justice have been furthered." *All-Weld, Inc. v. Department of Labor and Industry*, 34 Pa. Commonwealth Ct. 482, 486, 383 A.2d 982, 984 (1978). It is also well-settled that a continuance is proper when the rights of one of the parties would be prejudiced by the refusal thereof. *Kaplan v. State Civil Service Commission*, 13 Pa. Commonwealth Ct. 29, 317 A.2d 683 (1974). Under the position articulated on behalf of the Board, however, the only way in which Roche could have sought a further continuance because of the absence of counsel would have been by means of a formal request made by his attorney. This would have been a Catch-22 situation in which Roche would have had to have his attorney present to request the continuance. Roche desired the representation of counsel but obviously saw himself as having no choice but to proceed in view of his inability to produce counsel within the one hour allotted him. We believe that Roche was diligent in his efforts to determine the status of the hearing and that his appearance without counsel was the result of the misinformation he had received rather than of any dilatory behavior on his part. *Replogle v. Department of Transportation*, 60 Pa. Commonwealth Ct. 183, 430 A.2d 1221 (1981). While Roche's attorney may have acted improperly in entrusting his client with responsibility for determining whether or not the scheduled hearing had been affected by the complainant attorney's hospitalization and while it was Roche's attorney's duty to find out with certainty whether or not a hearing at which he had been engaged to represent his client was to be held, by delegating this duty he therefore placed his client in a position which was "unfair to any litigant,

and especially one not experienced in the ways of litigation." *Bierstein v. Whitman*, 355 Pa. 515, 520, 50 A.2d 334, 336 (1947). Roche, himself, was not at fault. Instead, Roche was put in the disadvantageous position of representing himself and examining witnesses at a hearing at which suspension or revocation of the license by which he earned his livelihood was at stake. We believe, therefore, that the position and the actions of the Board in this situation "evince[s] a disregard of the Petitioners' rights and a dearth of understanding of the purpose of the administrative process." *Clark v. Department of Transportation*, 35 Pa. Commonwealth Ct. 87, 90, 384 A.2d 1363, 1364 (1978). The refusal of the continuance was clearly prejudicial to Roche for it denied him an opportunity to have his case properly presented. *Bierstein*. In the interests of justice, the Board should have afforded him a continuance of reasonable length in order to secure the presence of counsel at his hearing, and the Board abused its discretion in failing to do so under these circumstances. *Id.*

Roche also argues that the four-year delay between the time of the hearing and the Board's issuance of its initial adjudication and order constituted a deprivation of due process. A procedure to suspend or revoke a professional license is penal in nature and delay clearly tends to frustrate the just resolution of such matters. *State Dental Council and Examining Board v. Pollock*, 457 Pa. 264, 318 A.2d 910 (1974). Moreover, this Court has already remarked with regard to the State Board of Funeral Directors that a two and one-half year delay in the issuance of an adjudication was not to be condoned. *State Board of Funeral Directors v. Cieslak*, 24 Pa. Commonwealth Ct. 315, 355 A.2d 590 (1976). While, therefore, a four year delay cannot be excused, either Roche must demonstrate that some harm or prejudice to his interests resulted from the

delay. *Ullo v. State Board of Nurse Examiners*, 41 Pa. Commonwealth Ct. 204, 398 A.2d 764 (1979). He testified at the reconsideration hearing that he had incurred substantial expense during the four-year interim in completely refurbishing his establishment and enlarging his parking lot, which expense he would not have undertaken if he had known that his license was in jeopardy. There is no evidence, however, that he sought a more expeditious resolution of his case prior to undertaking such extensive improvements and he cannot now claim prejudice on the basis of actions undertaken by him while awaiting the Board's determination. Moreover, once the Board did act, it ordered the license be revoked prospectively. Consequently, during the period of delay, Roche's ability to work in his profession remained unquestioned. We cannot say, therefore, that Roche was denied due process by the four-year delay, but we do remind the Board that its repeated dilatory behavior in adjudicating complaints brought before it, the resolution of which involve a person's livelihood, cannot be tolerated. *Cieslak* involved a two and one-half year delay, and we are now confronted with a matter in which delay occurs not once but twice: 1) the Board delayed four years in issuing its initial order after the 1973 hearing and 2) did not issue its second order until eleven months after the reconsideration hearing and then, only after Roche commenced an action in mandamus in this Court to compel the Board to act.

Roche contends that he was also denied due process by a commingling of the prosecutory and adjudicatory functions at both the hearing and determination levels. During the course of the hearings, Lawrence Alexander (Alexander), who was counsel for the Board and served as prosecutor, is alleged to have assumed responsibility for passing upon evidentiary questions which arose during Roche's attempted cross-exami-

136

nation of witnesses.[5] While it is true that Alexander's statements were not couched in terms of evidentiary objections, they were less than evidentiary rulings, and such conduct standing alone does not rise to the level of an impermissible commingling of functions. However, the record is replete with instances in which Alexander took upon himself the role of con-

[5] ROCHE: Q. The arrangements were made, as a funeral director normally does, to call Florida—
MR. ALEXANDER: You can testify when you come to the stand. You are just allowed to ask her questions. (Record at p. 26a)
. . . .
ROCHE: Q. I have never made that statement.
MR. ALEXANDER: Just ask questions. (Record at p. 28a)
. . . .
ROCHE: Thank you. Gentlemen, on the point of Letters of Administration—
MR. ALEXANDER: No. Any statements you want to make or anything like that, save for your defense. You are just to question Mrs. Mooney now as to what she has testified to.
ROCHE: I'm sorry. (Record at p. 29a)
. . . .
ROCHE: Q. To Edna Roti. It seems everything is photographed but that. A few points here—
MR. ALEXANDER: Well, are you going to ask questions of the witness? (Record at p. 32a)
. . . .
ROCHE: Q. Nor am I. This is not a legal point. The point is—
MR. ALEXANDER: Let's not bandy words. Try to confine yourself to questions of the witness.
ROCHE: That's a question.
MR. ALEXANDER: Well, she answered the question. (Record at p. 35a)
. . . .
ROCHE: Q. How did you get hurt?
MOONEY: A. We are still being hurt—
MR. ALEXANDER: This is irrelevant.
ROCHE: I'm not an attorney, sir. I'm just doing my best. That's enough. That's fine. (Record at p. 36a)

ducting the hearing,[6] of two instances in which he testified for the witness,[7] and of one instance in which he coached the witness.[8]

In *Horn v. Township of Hilltown*, 461 Pa. 745, 748, 337 A.2d 858, 860 (1975), our Supreme Court, quoting from *Schlesinger Appeal*, 404 Pa. 584, 598, 172 A.2d 835, 840-41 (1961) (quoting *In re Murchison*, 349 U.S. 133, 136 (1955)), set forth the fundamental principle of law governing the denial of due process by the commingling of the adjudicatory and prosecutory functions:

> A fair trial in a fair tribunal is a basic requirement of due process. Fairness of course requires an absence of actual bias in the trial of cases. But our system of law has always endeavored to prevent even the probability of unfairness. To this end no man can be a judge in his own case and no man is permitted to try cases where he has an interest in the outcome. ... This Court has said ... that 'every procedure which would offer a possible temptation to the average man as a judge ... not to hold the balance nice, clear, and true between the State and the accused, denies the latter due process of law.' Tumey v. Ohio, 273 U.S. 510, 532, 47 S.Ct. 437, 444, 71 L.Ed. 749.

Here, as in *Horn*, "we are presented with a governmental body charged with certain decision-making functions that must avoid the appearance of possible prejudice, be it from its members or from those who advise it or represent parties before it." *Id.* at 748, 337 A.2d at 860. We believe, therefore, that Alexander's failure to confine himself strictly to his prosecu-

---

[6] *E.g., see*, Record at pp. 6a, 9a, 26a, 28a, 29a, 32a, 36a, 51a, 72a, 94a, 95a, 96a.

[7] *See*, Record at pp. 26a and 47a.

[8] *See*, Record at p. 34a.

torial role in his adversarial dealings with a layman appearing pro se before the Board created an impermissible appearance of possible prejudice. *See Horn; Chairman.* Moreover, while Roche may not have been deprived of a fair tribunal thereby, "there are sufficient indications in the instant case to warrant a conclusion that the balance was not properly set by the [prosecutor] thereby depriving Appellant of a fair trial." *Bruteyn Appeal,* 32 Pa. Commonwealth Ct. 541, 380 A.2d 497 (1977).

Roche asserts, too, that due process was denied him because the initial adjudication was prepared by an attorney who had succeeded to Alexander's functions as counsel for the Board.[9] In *State Board of Medical Education and Licensure v. Grumbles,* 22 Pa.

---

[9] Although not raised by Roche, the judicial posture of the Board at the reconsideration hearing with regard to this matter cannot go unremarked. In the course of the reconsideration hearing, the Board voted to rescind the order granting the petition for reconsideration and in its stead issued an order granting the petition for a rehearing, thereby reopening the hearing in its entirety. The Board then briefly adjourned. Among the matters to be covered at the newly granted hearing was Roche's assertion that the adjudication had been written by Alexander's successor as counsel for the Board. Upon reconvening, the Chairman of the Board addressed Roche's attorney:

> You objected to us putting in evidence from Mr. Brady about who wrote the adjudication, and you alleged in your conversation that Mr. Alexander was involved in the adjudication. When we wanted to put him on, you objected to that unless we reopened the entire case. We felt it important that he be put on to clarify our position.

A few moments later the Board voted again, this time to reopen the hearing solely for the purpose of rebutting only mitigating circumstances presented by Roche's attorney, thereby overruling the previous motion to reopen the hearing in its entirety. The practice of a Board putting on a witness in order to clarify its own position with regard to a matter being heard before it certainly gives the impression of an improper and prejudicial commingling of functions.

Commonwealth Ct. 74, 79, 347 A.2d 782, 785 (1975), where an attorney attached to the Board acted as prosecutor and another attorney from the same staff prepared the adjudication, we stated, "If this dual role of the Board's counsel is not a violation of due process, it comes perilously close to being so." The broadest dimensions of constitutional protection must be provided to the factfinding process, *Pennsylvania Human Relations Commission v. Thorp, Reed & Armstrong*, 25 Pa. Commonwealth Ct. 295, 361 A.2d 497 (1976), and "while it may be extremely difficult to uncover bias or unfairness among an agency's findings of fact, a reviewing court unquestionably has power to examine the legal conclusions drawn therefrom . . . whether such conclusions are affected by bias or otherwise." *Id.* at 302-03, 361 A.2d at 501. Here Roche has alleged that the Board abused its discretion in revoking rather than suspending his license, which contention we do not reach at this time, and, in the presence of this presently unresolved allegation, we are not now in a position to make a determination as to the existence of actual prejudice due to the roles of the two staff attorneys. The actions of the Board and the procedures followed by its attorneys create a sufficient appearance of impropriety to constitute a denial of due process.

We will, therefore, vacate the order of the Board and "remand for a proper hearing . . . in order to insure the integrity of the administrative process." *Bruteyn Appeal*, 32 Pa. Commonwealth Ct. at 551, 380 A.2d at 502.

### Order

And Now, this 10th day of December, 1981, the order of the State Board of Funeral Directors in the above-captioned matter is vacated and remanded for a new hearing in conformance with the foregoing opinion.