Brookside Distilling Products Corporation, Appellant, *v.* Monarch Wine Company of Georgia.

Argued January 9, 1951. Before Drew, C. J., Stern, Stearne, Jones, Bell, Ladner and Chidsey, JJ..

*John W. Bour,* with him *Carlon M. O'Malley,* for appellant.

*Raymond A. Speiser,* with him *Speiser, Satinsky, Gilliland and Packel,* and *Joseph T. McDonald,* for appellee.

OPINION BY MR. JUSTICE CHIDSEY, March 19, 1951:

Brookside Distilling Products Corporation, appellant, instituted this action in assumpsit to recover the amount paid by it for a quantity of wine ordered from and shipped by Monarch Wine Company of Georgia, appellee, contending that the wine supplied did not comply with Pennsylvania Liquor Control Board standards. At the trial, a jury returned a verdict for Monarch Wine Company. Brookside Distilling Products Corporation moved for a new trial, assigning as the principal error, the instruction of the trial judge that if the appellant made no test or no adequate test of the wine within a reasonable time of receipt thereof, it lost the right to recover. This appeal is from the order of the court *en banc* dismissing appellant's motion for a new trial and entry of judgment on the verdict.

Appellant is engaged in the business of buying finished wine in bulk, bottling it, and reselling it to the Pennsylvania Liquor Control Board, hereafter referred to as the Board. The specifications of the Board establish certain maximums for the amounts of volatile acidity and sulphur dioxide in wines. Wines containing an excess of either acetic acid or sulphur dioxide are not acceptable to it. Appellee is a manufacturer, buyer, and seller of finished wines, which it sells throughout the United States.

Appellant, on February 6, 1948, by letter, confirmed a telephone conversation of even date with appellee, ordering one 6,000 gallon tank car of blackberry wine to be delivered in accordance with shipping instructions. The wine was put into the tank car by appellee

on February 12, 1948, at which time it was tested for total acids, alcohol, volatile acidity, and sulphur dioxide, and found to conform to the Federal regulations, which are the same as the Pennsylvania regulations. The wine arrived at appellant's plant on February 24, 1948, where it was tested for alcohol and sulphur dioxide only. These tests indicated the wine conformed to the established standards in these respects, but no test was made to determine the volatile acidity.

The wine was drawn from the tank car through appellant's hoses into an 8,000 gallon tank in its plant. On February 25th there were bottled 350 cases of 4/5 quarts; on February 26th, 347 cases of 4/5 quarts; on February 28th, 949 cases of half gallons; on March 11th, 302 cases of half gallons; and, on March 12th, 383 cases of half gallons. When the first 2,000 gallons had been bottled, the remaining 4,000 gallons were drawn through hoses from the 8,000 gallon tank into two 2,000 gallon tanks and there stored until bottling was resumed on March 11th.

The bottled wine was shipped to the Board warehouse in Scranton, Pennsylvania, in several shipments under dates of March 8th, 12th, 13th, 15th, and 20th. On March 16th, pursuant to regular procedure, a half gallon jug of wine bottled by appellant on March 12th, was analyzed in the Board laboratory by one of the Board's chemists and found to exceed the maximum standards of the State with respect to sulphur dioxide and volatile acidity. Additional samples were analyzed and all were found similarly faulty.

The Board, on March 22, 1948, gave notice to appellant that the wine did not conform to standards and also notified it that the wine was being returned. Appellant, on the same date, notified appellee by telegram and telephone of the rejection of the wine by the Board.

Appellant's consulting chemist made a subsequent analysis of a sample of this bottled wine and also found that it failed to conform to the State and Federal regulations.

With respect to the standards used, it appears that wine of low alcoholic content, such as that here involved, is unstable in character, and unless chemically treated, will undergo secondary fermentation which causes a rise in volatile acidity, i.e., there will be an increase in the amount of acetic acid which may render the wine unpalatable. Introduction of sulphur dioxide into the wine in proper quantities prevents a rise in volatile acidity. A characteristic of sulphur dioxide as used in this manner is that it cannot increase in amount unless more is added, but it may decrease by reason of its escape in gaseous form through agitation, bottling, filtering, or storage in open vats. There was testimony that the sulphur dioxide content of the wine here in question had increased during the interval between its receipt by appellant and its examination by the Board's chemist.

Appellant contends that appellee, knowing that Pennsylvania was a monopoly state and that the wine had to conform to certain standards, impliedly warranted its wine to be acceptable to the Pennsylvania Liquor Control Board and, consequently, appellant was not required to test the wine. It argues that the extent of its duty was to give notice of rejection within a reasonable time after notice *to it* of any defectiveness in the wine.

Appellant relies upon *Wolstenholme, Inc. v. Jos. Randall & Bro., Inc.*, 295 Pa. 131, 144 A. 909; *Crunden Martin Mfg. Co. v. Turner*, 274 Pa. 425, 118 A. 365; *Industrial Rayon Corporation v. Caplan*, 125 Pa. Superior Ct. 414, 190 A. 185; *Bennett v. Perlstein & Co., Inc.*, 124 Pa. Superior Ct. 65, 188 A. 97; and, *Superior*

*Steel and Wire Co. v. Sobel,* 124 Pa. Superior Ct. 341, 188 A. 398 in support of its contention. These cases are not controlling. All involve express warranties, trade customs or latent defects which, in each instance, relieved the buyer with regard to immediate inspection.

Where there is no opportunity to inspect because of immediate resale (*Superior Steel and Wire Co. v. Sobel,* supra), where the defect is latent and could not be discovered by inspection, but only determined when the goods are used by the ultimate consumers. (*Wolstenholme v. Randall, Inc.,* supra; *Industrial Rayon Corp. v. Caplan,* supra; *Bennett v. Perlstein & Co., Inc.,* supra), or, where, according to trade custom, the goods were bought for resale to the ultimate consumer in original packages (*Crunden Martin Mfg. Co. v. Turner,* supra), the duty to inspect is excused. In each of the foregoing cases it appears that despite due diligence, the defect either could not have been ascertained by inspection or discovered until the goods had passed from the hands of the buyer into those of the ultimate consumer. These cases are readily distinguishable from those where opportunity exists for effectual inspection. This distinction is clearly pointed out in *Comfort Springs Corporation v. Allancraft Furniture Shop, Inc.,* 165 Pa. Superior Ct. 303, 67 A. 818, wherein it was held that since the defects complained of were readily ascertainable by inspection and no inspection was made by the buyer for more than 30 days, there was an inordinate delay.

It is clear that ordinarily an inspection, trial, or test, to determine whether goods are of the quality warranted, must be made by the buyer within a reasonable time, and if the buyer is derelict in that regard he is precluded from asserting any right of rescission: *Tinius Olsen Testing Machine Co. v. Wolf Co.,* 297

Pa. 153, 146 A. 541; *Wright v. General Carbonic Co.,* 271 Pa. 332, 114 A. 517; *Beaunit Mills, Inc. v. Burstein Brothers,* 92 Pa. Superior Ct. 206. Complete exercise of dominion over the subject matter without test or inspection to determine the wholesomeness thereof is wholly inconsistent with retention of the right to rescind. Exercise of due diligence in the inspection of goods purchased is required: *Descalzi v. North American Fruit Exchange,* 96 Pa. Superior Ct. 293.

Here the jury properly could have found that the wine was tested when it left appellee's plant and found to conform to the State and Federal regulations; that upon receipt by appellant at its plant no test was made for volatile acidity; that tests for alcohol and sulphur dioxide indicated the wine was satisfactory in these respects; that some of the wine was first stored and then bottled, and the balance restored, and thereafter bottled; that when the wine was tested by the Board chemist it was found to be too high in volatile acidity and sulphur dioxide; that sulphur dioxide content cannot increase unless more is added; and, that since the wine admittedly conformed to the standards with respect to sulphur dioxide and alcohol content when drawn into the tanks of appellant's plant, it would appear that the wine shipped to the Board was not of the same composition as that which appellee delivered. Certainly a warranty of the seller cannot be deemed to cover a product after it has been altered or changed in composition while in the exclusive possession and control of the purchaser.

Appellant was under a duty to make an adequate test within a reasonable time after receipt of the wine and before any change or alteration in its contents could occur. The finding of the jury that no adequate test was made is amply supported by the evidence. Failure to make the necessary tests forecloses recovery

by it. The trial court instructed the jury that it, the trier of facts, should determine *whether an adequate test* had been made by appellant before shipping the wine to the Board and that, if satisfied that no such test was made, appellant could not recover. In so charging the jury, the learned trial judge did not commit error.

The additional contentions of appellant are equally without merit. The identity of a sample of the wine as manufactured and tested by the defendant with that delivered to the plaintiff was sufficiently established. This was practically admitted by plaintiff's counsel and the only objection interposed was as to the relevancy of the testimony with respect thereto. The testimony was clearly relevant.

Appellant contends that the lower court erred in permitting appellee's counsel to designate its witness L. O. Farrell "an expert wine maker and chemist" in questions asked of him with respect to the condition of samples of wine sent by appellant to appellee for examination. The witness' qualifications as a chemist were not questioned and his answers were based on his knowledge as a chemist. He had been employed by appellees in June of 1946 as chemist and assistant to appellee's plant superintendent "in various plant work" and thus at the time of the shipment of the wine had had one and one-half years to apply his knowledge and experience in chemistry to the wine business. The trial judge considered the qualifications of the witness sufficient to permit the designation given him, and in so doing was within his discretionary power. See *Tennant v. Hartford Steam Boiler Inspection and Insurance Company*, 351 Pa. 102, 40 A. 2d 385; *The Delaware and Chesapeake Steam Towboat Co. v. Starrs*, 69 Pa. 36; *Sorg v. The First German Evangelical St. Paul's Congregation*, 63 Pa. 156.

At the opening of court on the second day of trial, Mr. Hill of appellant's counsel informed the court that his client was dissatisfied with the manner in which the case was being tried. He requested permission to withdraw from the case and moved for a continuance. The denial of this motion is assigned as error.

The case did not come to trial until almost two years after the action was instituted. Appellee had brought witnesses from Georgia and counsel from Philadelphia. In disposing of this contention by appellant, the lower court in its opinion said: "The actual motion was . . . for a continuance . . . As for Mr. Hill's desire to withdraw from the case, we recognize it as the natural attitude of an ethical and conscientious attorney who learns that his client is dissatisfied with him. However, no motion for leave to withdraw as counsel was before the Court, and as Mr. Hill did not withdraw but continued in the case with ability and distinction, we cannot believe that plaintiff's case was prejudiced either by the motion or by the Court's refusal thereof." The matter was one for the exercise of the trial judge's discretion and the record discloses no abuse thereof. See *Anderson v. Guerrein Sky-Way Amusement Company*, 346 Pa. 80, 29 A. 2d 682.

Judgment affirmed.