Opinion by
 

 Hannum, J.,
 

 This is an appeal by the defendants from a judgment entered in favor of the plaintiff in an action of trespass. This case was originally argued on June 15, 1967
 
 [1]
 
 and an opinion entered in which judgment was reversed and entered for the defendants.
 
 [2]
 

 However, a reargument was ordered, which was held on March 21 of this year.
 

 William Chisholm, now deceased from causes not related to this action, was walking in a southeasterly direction on the southwest side of Lancaster Avenue, Philadelphia, Pennsylvania, on September 12, 1960 at
 
 *485
 
 about ten to eleven a.in. At that time the wind was blowing at 34 to 35 miles per hour with gusts up to 45 to 46 miles per hour.
 
 [3]
 
 As he passed in front of the defendants’ furniture store located at 4090 Lancaster Avenue, a large plate glass window in the front of the defendants’ premises blew out and struck him, knocking him to his knees and severely lacerating his leg. The jury rendered a verdict for the plaintiff in the sum. of $5,000.00. The court below dismissed the defendants’ motions for judgment n.o.v. and for a new trial and entered judgment on the verdict. This appeal followed.
 

 The plaintiff’s alleged cause of action was two-fold. He alleged that, because the building had been constructed by the defendants in an improper manner, they were responsible for such negligent construction and, secondly, because they were the occupiers of the building they were negligent in failing to protect said windows so as not to harm the public and in failing to take cognizance of the notice of oncoming high winds.
 

 Before considering the specific contentions of the parties, there are several general principles of law which are applicable to the case. “It is, of course, horn-book law that the evidence must be considered in the light most favorable to the verdict winner, and he must be given the benefit of
 
 every reasonable inference of fact
 
 arising therefrom, but he is not entitled to inferences which amount merely to a guess or conjecture: Bohner v. Eastern Express, Inc., 405 Pa. 463, 466, 469, 175 A. 2d 864.” (Emphasis in the original) :
 
 Wood v. Conneaut Lake Park, Inc.,
 
 417 Pa. 58, 209 A. 2d 268
 
 *486
 
 (1965), cited with approval in
 
 Flaherty v. Pa. Railroad Co.,
 
 426 Pa. 83, 231 A. 2d 179 (1967).
 

 “It is well settled (1) that defendant is not an insurer: Cooper v. Pittsburgh, 390 Pa. 534, 136 A. 2d 463, and cases cited therein; Haugh v. Harris Bros. Amusement Co., 315 Pa. 90, 172 A. 145; Schentzel v. Philadelphia National League Club, 173 Pa. Superior Ct. 179, 96 A. 2d 181, and (2) that plaintiff must prove by a fair preponderance of the evidence, (a) that defendant was negligent, and (b) that its negligence was the proximate cause of the accident: Markle v. Robert Hall Clothes, 411 Pa. 282, 191 A. 2d 374; Zilka v. Sanctis Const. Co., 409 Pa. 396, 186 A. 2d 897; Bohner v. Eastern Express, Inc., 405 Pa., supra. Moreover, a verdict will not be sustained which is based on conjecture or surmise or guess: Steiner v. Pittsburgh Railways Co., 415 Pa. 549, 204 A. 2d 254; Robbins v. Kaufman, 415 Pa. 192, 202 A. 2d 826.”
 
 Wood v. Conneaut Lake Park, Inc.,
 
 supra.
 

 It was held in
 
 Doerr v. Rand’s,
 
 340 Pa. 183, 16 A. 2d 377 (1940), where the wife-plaintiff was standing on the sidewalk in front of a drug store operated by the defendant and was struck by a strip of opaque vitrelite glass about three feet long, one foot wide and three-quarters of an inch thick, that the doctrine of res ipsa loquitur does not apply and that it was incumbent upon the plaintiff to produce some evidence of fact or circumstances from which negligence on the part of the defendant might properly be inferred.
 

 It was held in.
 
 Pope v. Reading Company,
 
 304 Pa. 326, 156 A. 106 (1931), that “On account of the fact that ordinarily more people pass on the sidewalk in front of one’s property than are ever likely to pass over or congregate on a lot alongside of one’s property, the person in possession of property is held to a higher degree of care in respect to the safeguarding of a wall or other structure in front of that prop
 
 *487
 
 erty and near a street or footway than he is to his wall or structure not adjoining a public highway or foot-way.”
 

 With these principles in mind we shall examine the contentions of the parties. It is the plaintiff’s contention that the defendants’ building was improperly constructed in that the recessed entranceway of the store channeled the wind into the entrance doors, which opened inward only, with such velocity as to push them open, permitting the wind to enter the premises and exercise sufficient pressure on the walls and ceiling, causing the glass window in question to blow out and break. Plaintiff further contends that since the building was built by the defendants, they are responsible for such improper construction. It is the defendants’ contention that in order to charge the defendants with negligence the plaintiff must show that they had knowledge, or were at least chargeable with knowledge, that there was a defect or danger in the construction of the building and that the plaintiff failed to prove any such knowledge.
 

 Section 302 of Restatement 2d, Torts, states: “Risk of Direct or Indirect Harm. A negligent act or omission may be one which involves an unreasonable risk of harm to another through either (a) the continuous operation of a force started or continued by the act or omission, or (b) the foreseeable action of the other, a third person, an animal, or a force of nature.”
 

 Comment g under that section states: “g. Abnormal conditions of nature. The actor is not required to anticipate or provide against conditions of nature or the operation of natural forces which are of so unusual a character that the burden of providing for them would be out of all proportion to the chance of their existence or operation and the risk of harm to others involved in their possible existence or operation. It
 
 *488
 
 is therefore not necessary that a particular operation of the natural force be unprecedented. The likelihood of its recurrence may be so slight that in the aggregate the burden of constantly providing against it would be out of all proportion great as compared with the magnitude of the risk involved in the possibility of its recurrence.”
 

 Following the Comment are two illustrations, as follows: “4. In 1938 a hurricane caused serious damage in a city in New England. There is no record of any hurricane of similar force within the preceding 130 years. A, thereafter constructing a building in the city in question, is not negligent in failing to adopt an expensive method of construction which would make it safe against damage from a similar hurricane.
 

 “5. The same facts as in Illustration 4, with the additional fact that by 1957 hurricanes of similar violence have recurred four times in New England. A, constructing a building in 1957, may be found negligent in failing to adopt a method of construction which would make it safe against such hurricanes.”
 

 The foregoing illustrations are particularly applicable to the facts in the present case. The plaintiff produced an exhibit, which was a certification by the United States Department of Commerce Weather Bureau, showing that during the period from September 1958 through September 1960, winds of 34 miles an hour or greater (excluding gusts) were observed on 40 separate occasions, but he produced no evidence of any such winds prior to September 1958. However, the testimony also showed that the defendants had constructed their building more than two years prior to the date of the accident. The accident occurred on September 12, 1960. Therefore, there was no evidence produced to put the defendants on notice of any unusual winds which they should have to take into con
 
 *489
 
 sideration at the time of the construction of their building. It follows that the plaintiff did not establish by competent evidence his first cause of action.
 

 Since the doctrine of res ipsa loquitor or exclusive control does not apply,
 
 Doerr v. Rand’s,
 
 supra, the plaintiff attempted to establish by the expert testimony of Michael A. Gimbel, a safety engineer, that the negligence of the defendants was the cause of the accident. It is defendants’ contention, first, that the court erred in accepting Mr. Gimbel as an expert witness and permitting him to testify, and, secondly, that his opinion as to the cause of the window’s collapse was not based on sufficient facts. We have no doubt as to Mr. Gimbel’s qualifications. It was said in
 
 Reardon v. Meehan,
 
 424 Pa. 460, 227 A. 2d 667 (1967), that “‘A qualified expert may be permitted to assert a relevant fact not generally known but known to him because of his special training and experience. But this special training and experience must be confined to technical knowledge which is beyond that of the average man and to that which would be of assistance in determining the ultimate issues in the case’: Steele v. Shepperd, 411 Pa. 481, 484, 192 A. 2d 397 (1963). If all the primary facts can be accurately described to a jury and if the jury is as capable of comprehending and understanding such facts and drawing correct conclusions from them as are witnesses possessed of special training, experience or observation, then there is no need for the testimony of an expert. See: Salem v. U. S. Lines Co., 370 U.S. 31, 82 S. Ct. 1119 (1962), rehearing denied 370 U.S. 965, 82 S. Ct. 1578; Graham v. Penna. Co., 139 Pa. 149, 159, 21 A. 151 (1891). The employment of testimony of an expert rises from necessity, a necessity born of the fact that the subject matter of the inquiry is one involving special skills and training beyond the ken of the ordinary layman: Weis
 
 *490
 
 man v. Sander Chevrolet Co., 402 Pa. 272, 167 A. 2d 308 (1961); Jemison v. Pfeifer, 397 Pa. 81, 152 A. 2d 697 (1959); Delair v. McAdoo, 324 Pa. 392, 188 A. 181 (1936). Meehans urge that the expert witness’ testimony was inadmissible because the matter in issue was capable of evaluation by the jury without the assistance of one claiming special knowledge upon the subject. Collins v. Zediker, 421 Pa. 52, 218 A. 2d 776 (1966), relied upon by Meehans, factually is entirely different from the case at bar. Our reading of this record indicates that the expert witness was well qualified to speak on the matters of which he was inquired and that the subject matter of his testimony, i.e., the constituents of fibre rugs, the reaction of such constituents to moisture, etc., was of such nature that the ordinary layman would not have the knowledge or training upon which to base a sound judgment. The testimony of the expert witness did not invade the province of the jury; on the contrary, it was of aid in a field where only special knowledge and training would enable a person to reach a sound conclusion. The expert’s testimony revealed the tendency of this type of fibre rug to curl and that such curling, by reason of the materials in the rug, would have taken place at such a period of time prior to the happening of the accident that the Meehans, in the exercise of due care, should have known that the edges of the rug had curled. We find no merit in this contention of Meehans. The qualifications of this witness and the competency of his testi-i mony, to a considerable extent, were matters within the discretion of the court below. See: Cooper v. Metropolitan Life Ins. Co., 323 Pa. 295, 301, 186 A. 125 (1936); Stevenson v. East Deer Township, 379 Pa. 103, 106, 108 A. 2d 815 (1954). This record reveals no abuse of such discretion.”
 

 Again, in
 
 Griffith v. Clearfield Truck
 
 Rentals,
 
 Inc.,
 
 427 Pa. 30, 233 A. 2d 896 (1967), the Court said,
 
 at
 
 
 *491
 
 page 41: “Appellant further contends that the trial court allowed appellee’s expert witness to give an opinion based upon assumed facts not in the record. Appellee’s expert witness was a consulting engineer who had not been able to view the vehicle after the accident, as shortly following the accident, the tractor was completely disassembled by appellant. As we said in Moodie v. Westinghouse Elec. Corp., 367 Pa. 493, 501, 80 A. 2d 734 (1951) : Tf a witness “has any reasonable pretension to specialized knowledge on the subject under investigation, he may testify, and the weight to be given to his evidence is for the jury:” [citing cases] “The test applied must not set the standard of qualification so high as to exclude the only available kind of testimony ordinarily obtainable in such cases”: [citing a case] “Whether the knowledge of the witness justifies the admission of his testimony is a matter for preliminary inquiry by the trial court, being largely a question within its discretion. . . .” McCullough v. Holland Furnace Co., 293 Pa. 45, 49.’
 

 “Our examination of the record discloses that Mr. Isaac Stewart had been a consultant in matters involving accidents of trucks of various makes and manufacturers, a.nd certainly, on the basis of the record, Mr. Stewart had qualifications to establish him as an expert, and there was no abuse of discretion by the trial court in allowing him to testify as such. The court further stated in its opinion, as we have previously mentioned, that the expert witness did definitely testify as to the cause of the steering apparatus locking. On the basis of the record, and the testimony of the expert, Mr. Stewart, who, according to the trial court, did not waiver in expressing his opinion that the locking of the steering wheel was caused by the failure of the rear universal joint, we must conclude that the trial court did not abuse its discretion in either allowing him to testify or as to the scope of his statement.”
 

 
 *492
 
 In the present case the trial judge considered the general qualifications of Mr. Gimbel sufficient to estab-. lish him as an expert witness. He held a B.S. degree in industrial engineering and had approximately twenty-two years experience as a safety engineer, and in addition had considerable knowledge on the subject of wind pressure and its effects. Permitting an expert witness to testify is within the sound discretion of the trial judge and from a close examination of the record it is clear that he in no way abused such discretion.
 
 Brookside Distilling Products Corporation v. Monarch Wine Company of Georgia,
 
 367 Pa. 8, 79 A. 2d 242 (1951).
 

 However, the more serious aspect of this case is whether Mr. Gimbel’s opinion as to the cause of the window’s collapse is based on sufficient facts. Expert testimony on a state of facts not supported by the evidence is inadmissible:
 
 Zeigler v. Simplex Foundation Company,
 
 228 Pa. 64, 77 A. 239 (1910) ;
 
 Pittsburg Gas Engine Company v. South Side Electric Manufacturing Company,
 
 43 Pa. Superior Ct. 485 (1910); and an expert opinion cannot be based on facts not before the jury.
 
 Murray v. Siegal,
 
 413 Pa. 23, 195 A. 2d 790 (1963). As in this last cited case Mr. Gimbel had no knowledge of conditions at the time of the accident and based his opinion on facts garnered by him long after-wards, six years. Many of those facts were assumed and not demonstrated by evidence.
 

 See also
 
 Rennekamp v. Blair,
 
 375 Pa. 620, 628, 101 A. 2d 669 (1954), where the Court said: “Opinion evidence can have probative value, if at all, only where there is testimony sufficient to support findings by the jury of the facts assumed by the expert as the predicate of his opinion.”
 

 The only facts that were established were that the window collapsed and fell outward onto the sidewalk,
 
 *493
 
 that defendants’ building was constructed with a break or setback in the front to permit a recessed entrance-way with doors that opened inward and that the velocity of the wind was 36 miles per hour with gusts up to 46 miles per hour. The witness knew nothing about the thickness of the glass in the window, the tension óf the spring which closed the doors, conditions inside the premises such as other openings, whether the doors had been locked or otherwise barricaded during this period, whether they had in fact blown open by the tunneling of the wind thus permitting it to enter in such volume as to create pressure or to disturb persons or contents therein. The effect of the outside pressure against the window from the strong winds blowing against it was not disclosed; nor was the effect of intermittent gusts of wind at 46 miles per hour shown. It is conceivable that strong pressure from the outside suddenly withdrawn might cause the window to collapse and fall outward. As previously stated, Mr. Gimbel knew nothing about the installation or maintenance of the window and he admitted that improper installation or maintenance might have been another cause of its collapse.
 

 Although it is not necessary that a plaintiff prove with mathematical exactness that an accident could only have been caused in one manner to the exclusion of all other possibilities, he must eliminate those other causes, if any, as are fairly suggested by the evidence.
 
 Cuthbert v. Philadelphia,,
 
 417 Pa. 610, 209 A. 2d 261 (1965), and cases cited therein.
 

 We are led to the conclusion that Mr. Gimbel’s opinion as to the cause of the window breaking was conjecture based on a theory unsupported by sufficient established facts. Furthermore, it was but one of several causes that might have been suggested by this record. Therefore, it was insufficient to support the ver
 
 *494
 
 diet. A verdict will not be sustained which is based on conjecture, surmise or guess.
 
 Flaherty v. Pennsylvania Railroad Company,
 
 426 Pa. 83, 231 A. 2d 179 (1967);
 
 Steiner v. Pittsburgh Railways Company,
 
 415 Pa. 549, 204 A. 2d 254
 
 (1964); Robbins v. Kaufman,
 
 415 Pa. 192, 202 A. 2d 826 (1964).
 

 It follows, therefore, that the plaintiff did not establish by competent evidence his second cause of action. For that reason the judgment must be reversed.
 

 Judgment reversed and here entered for the defendants.
 

 Wright, P. J., Hoffman and Spaulding, JJ., would have affirmed on the opinion of Judge Griffiths of the court below.
 

 [1]
 

 The writer of this opinion was not a member of the Court at that time.
 

 [2]
 

 Wright, J. (now P. J.), Hoffman and Spaulding, JJ., would have affirmed on the opinion of Judge Griffiths of the court below.
 

 [3]
 

 Although the parties at various times refer to Hurricane Donna, according to the Beaufort Scale wind speeds between 32 and 46 miles per hour are classified as moderate gales or fresh gales. Winds are not classified as hurricane until they attain a speed of more than 75 miles per hour. See Encyclopedia Britanniea, Vol. 3, page 272.