Flavin *v.* Aldrich (et al., Appellant).

Argued November 12, 1968.  Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and HANNUM, JJ.

*Thomas J. Reinstadtler, Jr.,* with him *Louis Anstandig,* and *Egler, McGregor & Reinstadtler,* for appellant.

*William R. Caroselli,* with him *McArdle & McLaughlin,* for appellee.

OPINION BY HOFFMAN, J., December 12, 1968:

On September 21, 1963, at about 5:00 p.m. Florentina Aldrich purchased a 1958 Plymouth from Cuda's Lincoln Mercury, Inc. (Cuda) in Pittsburgh. Mrs. Aldrich testified that approximately one-half hour later she was proceeding down Warrington Ave. when her brakes failed. As a result, her automobile struck the rear of the automobile occupied by Mr. and Mrs. Flavin.

Flavins brought an action in trespass against Mrs. Aldrich and Cuda. The case was tried before a jury which returned a verdict against both defendants in the stipulated sum of $9750.00. Cuda has now appealed raising two contentions:

(a) That the lower court erred in allowing Police Officer Conley to testify as an automotive expert

(b) That the court erred in submitting this case to the jury, because negligence was not demonstrated.

1. *Did the lower court err in allowing expert testimony?*

Cuda claims that the lower court erred in allowing Police Officer Conley, who was at the scene of the accident, to testify, as an expert, that the braking system was defective.

Officer Conley was qualified as an automotive expert on the basis of the following testimony: "Q. Officer Conley, have you ever had any formal training as

a mechanic? A. Yes, sir, I have. Q. And would you tell us what that formal training consisted of, sir? A. A general mechanics wheeled vehicle school in the Army. . . . Q. Do you remember how long the school was? A. Eight to ten weeks, I believe. Q. And during this schooling, did you study the braking systems of various vehicles? A. Yes, sir, I did. Q. In addition to the actual military vehicles that we are familiar with, did you have occasion to work with or on the braking systems of what we would call civilian cars? A. Yes, sir. Staff cars are civilian-type cars. . . . Q. Officer Conley, did you ever work at a garage gas station? A. Yes, sir. Q. And in that work, did you work on the braking systems of automobiles? A. Yes, sir, I did. Q. And since you have been with the police force, do you still work on automobiles? A. Just my own and my friends. . . . Q. This would be in the nature of avocation or hobby, then. A. A hobby, yes, sir. Q. Could you tell us how frequently you do this mechanical work? A. Most of the time around inspection time. I would say I devote three, four, five hours a week. Q. In other words, you are checking your car and the cars of your friends to make sure they will pass inspection? A. Yes. Q. And in this regard, do you have to check the braking systems of the cars? A. Definitely."

Whether the qualifications of a witness justify the admission of his testimony as that of an expert is a question of discretion for the trial judge whose ruling will not be reversed except for a clear case of error. *Griffith v. Clearfield Truck Rentals, Inc.*, 427 Pa. 30, 233 A. 2d 896 (1967). The testimony of Officer Conley clearly justified the court's finding that he was an automotive expert.

The Court then permitted the plaintiff to ask Officer Conley the following: "Q. Officer Conley, did you

do anything in addition to putting your foot on the brake when you examined the car of Mrs. Aldrich? A. Well, the first time I put my foot on it, it went right to the floor. And I pumped it and it didn't pump up. Q. Officer Conley, as a result of what you did, can you tell us in your opinion what was wrong with the brake? A. It was losing fluid. . . . Q. And would you state what that opinion is, please? . . . Q. Mr. Conley, would you tell us in your opinion what was wrong with the brakes? A. They were defective because of loss of fluid. . . . Q. All right. Mr. Conley, can you also tell us in your opinion whether the loss of fluid occurred at or after the time of impact or whether the loss of fluid occurred before the time of impact? . . . Q. Mr. Conley, when did the loss of brake fluid occur? A. Prior to the accident. Prior to the impact, I will say that."

Defendant claims that this evidence should not have been allowed because the officer did not subject the braking system and master cylinder to a complete examination, but only tested the brake. In support of this, it cites *Moyer v. Ford Motor Company*, 205 Pa. Superior Ct. 384, 209 A. 2d 43 (1965). In *Moyer*, however, the expert had never seen the automobile and could only offer varying theories as to the cause of the accident.

Here, Officer Conley had an opportunity to test the brakes. Based on this he stated unequivocally that, in his opinion, the brakes were defective because of a loss of fluid which occurred prior to the accident. His testimony in this regard was not shown to be a guess or a conjecture. Indeed, Officer Conley was never cross-examined by defendant as to the basis of his opinion that the loss occurred prior to the accident.

The fact that the officer did not fully investigate the braking system is merely a matter for the jury, to

be considered in conjunction with all of the testimony rendered. In this regard, we agree with the lower court that his testimony as to an automobile's braking system "certainly dealt with a subject that was not common knowledge. The opinion of the officer was proper and the weight to be given it was for the jury. See: Topelski v. Univ. S. Side Autos, Inc., supra; Commonwealth v. Nasuti, 180 Pa. Superior Ct. 279, 282-83, 119 A. 2d 642, aff'd 385 Pa. 436, 123 A. 2d 435 (1956); Stevenson v. Ebervale Coal Co., 203 Pa. 316, 330 (1902); Commonwealth v. Harris, 186 Pa. Superior Ct. 59, 140 A. 2d 344 (1958); Brookside Dist. Prod. Corp. v. Monarch Wine Co., 367 Pa. 8, 79 A. 2d 242 (1951)."

2. *Did the Court err in submitting this case to the jury on the question of Cuda's negligence?*

Appellant argues that there was insufficient evidence of negligence in this case to submit to a jury. We do not agree.

Mrs. Aldrich purchased the automobile at 5:00 p.m. At that time she was told by Cuda's salesman that the car was in good condition. She testified that she had some difficulty with the brakes while driving. Finally, at the time of the accident, barely one half hour after the purchase, her brake failed resulting in the accident.

Officer Conley, an expert, tested the brakes at the scene of the accident and testified that the brakes were defective, resulting in a loss of brake fluid prior to the accident.

Willard J. Dickey, an automobile mechanic, testified on behalf of Cuda that he had inspected the automobile after the accident and found the master cylinder and braking system to be in proper operating condition. He admitted, however, that he did replace certain parts in the master cylinder, without cost. Mrs. Aldrich testified, more directly: "They fixed the brake. . . . He said master—master cylinder."

The facts in this case are very similar to those in *Topelski v. Universal South Side Autos, Inc.*, 407 Pa. 339, 180 A. 2d 414 (1962). In *Topelski*, the automobile was sold *two days* prior to the accident upon the representation that it was "guaranteed." The driver of the automobile stated that the accident occurred because the brakes failed. An automobile mechanic examined the brakes twenty days after the accident and found them to be defective. The Supreme Court held that these facts were sufficient to permit the jury to find that the defendant automobile dealer was negligent and that such negligence was a proximate cause of the plaintiff's injuries.

In the instant case, the automobile, sold upon representation that it was in good condition, was involved in an accident only *one-half hour* after the sale. The driver testified that the brakes failed her. Officer Conley, an automotive expert, testified that the brakes were defective prior to the accident. There is nothing in the record which would suggest that the vehicle had been altered or changed in the brief period from the time that it left the automobile dealer until the accident. The *Topelski* case clearly reflects that this evidence was sufficient, in itself, to allow a jury to find against the defendant automobile dealer.[1]

---

[1] The court also recognized that the standard of care set forth by the trial court is more stringent than that subsequently adopted by our Supreme Court. The court stated:

"The Trial Judge submitted the case to the jury on the theory that the defendant Cuda was under a duty, not only to the purchaser of the vehicle but to the public as well, not to sell a car which was defective where it knew or could have known of the defect by reasonable inspection. Although this was a proper expression of the law at the time this case was tried, since that time the Pennsylvania Supreme Court, in Webb v. Zern, 422 Pa. 424 (1966), has adopted Restatement 2d, Torts §402A (1965), 'as the law of this Commonwealth in tort actions involving the liability of those who sell products in a defective condition.' Fer-

Cuda also argues, however, that the brakes could not have been defective, because Mrs. Aldrich was able to drive the car home without experiencing any particular difficulty, except that the pedal was "a little low". In addition, the car was driven to Cuda's the following day and no particular difficulty was experienced.

A careful review of the record reflects, however, that two police officers testified that they were able to move the automobile out of traffic only by using the hand brake and pumping the foot brake. Mrs. Aldrich, who quite clearly was unable to express herself adequately in English, stated that she had to drive more slowly to her home after the accident because the brake was low. She further testified that she believed that the boy who drove the car to Cuda's for her the following day had to use the hand brake when he wanted to stop.

It was for the jury to analyze all of the evidence. There was clearly sufficient evidence from which the jury might have found that the brakes were defective, that this defect was attributable to Cuda's negligence, and that this negligence was the proximate cause of the accident. For these reasons the judgment of the lower court will be affirmed.

Judgment affirmed.

raro v. Ford Motor Co., 423 Pa. 324 (1966). Under this state of the law, the plaintiff would have been entitled to a charge that Cuda would be strictly liable, regardless of negligence, if they found that defendant had sold the car in a defective condition. See: Ferraro v. Ford Motor Co., supra."