John E. KRIDLER and Margaret J. Kridler, Plaintiffs,

v.

FORD MOTOR COMPANY and Zook Motors, Inc., also known as Zook Ford and Bruce Zook and John Zook, trading as Zook Motor, Inc., Defendants.

Civ. A. No. 80–66 Erie.

United States District Court
W. D. Pennsylvania.

June 27, 1969.

**1164**

John G. Gent, Erie, Pa., for plaintiffs.

John M. Wolford, Erie, Pa., for Ford Motor Co.

C. Donald Gates, Jr., Pittsburgh, Pa., for Zook Motors, Inc.

## OPINION

WEBER, District Judge.

This is a suit for personal injuries received in a one-car accident. Liability is claimed solely under express and implied warranties made in connection with the sale of the car. After extensive deliberation the jury failed to come to a verdict and we now consider motions of Defendants for a directed verdict and for verdict or judgment notwithstanding the failure of the jury to arrive at a verdict. Defendants argue that the evidence of any defective condition in the automobile was not sufficient to allow the case to be submitted to the jury and, more specifically, that the expert testimony on causation was insufficient to prove causation. This is a diversity action and Pennsylvania law governs.

Plaintiffs purchased a new 1963 Ford Fairlane from defendant Zook Motors, Inc., on March 28, 1963. They received the standard printed auto form warranty from Zook. The terms of the warranties under which plaintiffs claim are not important for our present considerations because of the grounds asserted in the present motions.

Plaintiffs allege that after taking delivery of the car from Zook they made frequent complaints about "hard steering" on turns to either side up to the time of the accident, and had taken the car to the dealers a number of times for servicing. Plaintiffs also testified that the original front tires on the car wore unevenly, and required replacement, although after an alignment of the front wheels by Zook there was no further evidence of uneven wear and none was found on inspection after the accident.

Approximately five months after delivery and after 12,000 miles of driving the plaintiffs were riding along a highway and had just cleared the top of a hill when they observed a line of cars ahead slowing to allow the lead car to make a turn to the right. Mr. Kridler applied his brakes, lost control of his car which left the highway and ended up in a ditch, with the resulting injuries to plaintiffs.

Plaintiffs' entire case on liability depends upon the proof of any defect existing in the automobile at the time of its delivery, either by the manufacturer (Ford) or the dealer (Zook) and proof that such defect was the proximate cause of the accident.

After the accident a mechanic found the tie rod bent considerably with the front wheels toed-out at an angle so that the automobile could not be operated at normal speeds. There was no dispute that the impact of this vehicle with a ditch at the time of the accident could cause such a bend. There is also no dispute that the bend, as found after the accident, could not have existed before the impact. The vehicle was repaired by the replacement of the tie rod and thereafter operated normally.

Plaintiffs' entire case as to the presence of a defect and that defect causing the accident rests on the testimony of plaintiff John Kridler, and his expert witness L. H. Nagler, an automotive engineer.

Mr. Nagler's conclusion that the tie rod was defective was based on testimony that Mr. Kridler experienced excessive tire wear, uncertain steering characteristics and that the tie rod was bent after the accident.

The testimony of Mr. Kridler was to the effect that the car steered hard, that it steered like a truck on right and left hand turns. Mr. Nagler would have preferred a more precise description that he was having uncertain or erratic directional characteristics, i. e., that the automobile would drift or veer on the straight-away. Mr. Nagler testified that he considered the description "hard-steering" a factor even though this description was vague, it was "as good as

one can expect of the average driver."
(T. Vol. V., p. 49.)

The second condition Mr. Nagler considered was the fact that the tie rod was bent after the accident, even though he admitted that the final shape of the tie rod did not exist before the accident. (T. Vol. V., p. 46.) No explanation was given for this conclusion.

The *most significant condition upon* which he based his opinion was the observation of excessive uneven tire wear on the first set of front tires which indicated to him that something was wrong with the steering, suspension and front end alignment. (T. Vol. V., p. 45.) Yet the evidence adduced at trial was that the set of front tires on the Kridler automobile at the time of the accident were not wearing excessively.

In Knapp v. Willys-Ardmore, Inc., 174 Pa.Super. 90, 100 A.2d 105 [1953], the purchaser of an automobile sought to recover the purchase price of his automobile because an alleged defective steering mechanism caused the new car to go out of control and strike a telephone pole. In the eight day period following delivery the plaintiff had driven the car for a total of 107 miles and prior to the accident had no indication of any defects. Plaintiff testified that the car was proceeding normally and suddenly veered to the right. A disinterested third-party corroborated this by testifying that the car suddenly wobbled and that the accident occurred immediately thereafter. On inspection of the car after the collision, a tie rod at the right end of the steering assembly was disconnected and bent and the connecting sleeve was broken. A mechanic testified that the bend in the rod was from a force from below and not from a head-on force. The Court found that the plaintiff had carried the burden of proof as to the inference that the car was defective when delivered and stated that the test of sufficiency of the plaintiff's evidence was whether or not the circumstances shown were such as would satisfy a reasonable mind that the defective condition existed when the automobile was delivered to plaintiff.

In the present case, even with the extenuating circumstances of the car being driven for over 12,000 miles, the fact that Mr. Kridler had struck a deer with the front portion of the car, and the fact that Mr. Nagler found no basic design fault with the tie rod of the Ford Fairlane series, we believe plaintiff under this state of the evidence would be entitled to have the jury determine whether or not the Kridler automobile was defective at the time of its delivery. See also Flavin v. Aldrich, 213 Pa.Super. 420, 250 A.2d 185 [1968]; Topelski v. Universal South Side Autos, Inc., 407 Pa. 339, 180 A.2d 414 [1962].

But having sufficient evidence to support an opinion of a defect in the tie rod does not satisfy all burdens which plaintiff must meet. Plaintiff still carries the burden of proof that the defect was the proximate cause of the accident. For this proof he relies entirely upon the opinion testimony of Mr. Nagler. Mr. Nagler testified in response to a hypothetical question that an appreciable and noticeable distortion of some of the pertinent steering parts was the "major contributing condition". (T. Vol. V., p. 64.) Our concern with this opinion is that it leaves open to the jury's speculation what the other conditions may have been, and whether the alleged defect was in actuality a proximate cause, or whether it was merely a "condition" upon which other and independent causes operated. A number of other possible causes were introduced by defendants, for which the present defendants would not be responsible, the quick application of the brakes by John Kridler, a wet road, a high crown in the road, the skidding and loss of control of the vehicle occurring after the application of the brakes by John Kridler. Basically, Mr. Nagler's opinion relates to a possibility rather than a reasonably certain probability. This is not sufficient.

Where an injury may be the result of one or more causes, for only one of

which the other party is responsible, the burden is upon the party alleging such causal relationship to point out the one which was, in fact, the proximate cause of his damage. Therefore, when expert testimony is such as to leave one of two inconsistent inferences possible of adoption by the jury, its decision would be nothing more than a guess and the burden of proof is not met. Mudano v. P. R. T. Co., 289 Pa. 51, 137 A. 104 [1927]. In Clark v. Pennsylvania Power & Light Co., 336 Pa. 75, 6 A.2d 892 [1939], it was held that the expert's opinion did not meet the burden of proof as to causation where plaintiff's expert could not testify that defendant's negligence, apart from a probable source of the fire within plaintiff's exclusive control, was the cause of the fire. "To prove a possibility only, or to leave the issue to surmise or conjecture, is never sufficient to sustain a verdict." Rennekamp v. Blair, 375 Pa. 620, p. 627, 101 A.2d 669 [1954].

But, while the plaintiffs' expert's opinion would require the jury to guess as to the cause of the accident, we do not rest our decision on that ground alone because we find a more compelling reason for its exclusion.

■■ An expert's opinion must be based upon facts established in the evidence. If it is not, or if it is based upon assumptions not supported by the evidence, it is worthless. Clark v. Pennsylvania Power & Light Co., supra. Unless the plaintiff produces either directly or inferentially some evidence to support the assumptions of the expert, his opinion must be excluded. In Moyer v. Ford Motor Company, 205 Pa.Super. 384, 209 A.2d 43 [1963], where the expert had no other basis for an opinion than plaintiff's testimony that his brakes failed, the court held that the expert could not testify from this that the brakes had locked or frozen because of improper lubrication or wheel adjustment.

■ Mr. Nagler's opinion was very clearly based upon an assumption not only not established by the evidence, but in fact contrary to the testimony of plaintiff John Kridler. This involved the sequence of events prior to the accident and dealing specifically with the question of whether plaintiff's car went out of control *before* or *after* Mr. Kridler applied his brakes. This is illustrated by the following testimony:

(T. Vol. V., p. 74)

(Nagler)

"A. The skidding might have been due to the brakes leaving tire marks and it might have been due to the loss of control. There are two different factors there, but the main thing we are dealing with here is the loss of control of the car.

Q. After it went in to a skid?

A. No, not necessarily. I was thinking in terms of before it went into a skid, the loss of control being the cause of the skid and not the result.

Q. All right. Let me ask you this: Is your opinion based partially or primarily on Mr. Kridler losing control and then going into a skid, losing basically steering control and then going into a skid?

A. That is a better definition, yes.

Q. That is what your opinion is based on?

A. That is right."

The assumption that the Kridler vehicle went out of control before the brakes were applied is not supported by the evidence and in fact is specifically contrary to plaintiff John Kridler's testimony. Mr. Kridler testified on direct examination that he was proceeding along Route 8 and that as he crested a hill he observed a number of cars stopping to permit the lead car to make a right hand turn.

"When they stopped, I * * * as they were stopping I applied my brakes, and when I did I lost complete control of the car." (T. Vol. I., p. 32.)

Again, on cross-examination, Mr. Kridler stated that the sequence of events were that he applied his brakes and at that time lost control of his car. (T. Vol. I., p. 58.)

Again, Mr. Nagler states the basis of his opinion:

(T. Vol. V., p. 102)

"Q. * * * but is it your testimony that one of the facts, a critical fact upon which your opinion is predicated was an unusual movement or gyration of the car before the skid occurred? A. That is right. If I hadn't made that plain, it was my fault in not expressing things as clearly as I would like to."

\* \* \* \* \* \*

(T. Vol. V., p. 102)

"Q. * * * but you aren't saying that if the man was driving normally down this hill, saw cars braking in front of him, the car remained in its parallel position without any gyrations until after he put his brakes on, at which time he started to skid, and it was only after he skidded the 75 or a hundred feet that he hit the ditch that he had the wild gyrations, you aren't saying in that situation that this steering suspension system was the cause of the accident?

A. By no means, no. That would have to be after the fact, and the steering characteristics under those conditions would not be a significant factor."

Under these circumstances, the expert opinion of Mr. Nagler is not sufficient to carry plaintiff's burden of proof on proximate cause because it was based upon facts not established by the evidence. "Opinion evidence can have probative value, if at all, only where there is testimony sufficient to support findings by the jury of the facts assumed by the expert as the predicate of his opinion." Rennekamp v. Blair, 375 Pa. 620, 101 A.2d 669 [1954]. See also Murray v. Siegal, 413 Pa. 23, 195 A.2d 790 [1963], and Jones v. Treegoob, 212 Pa.Super. 482, 243 A.2d 161 [1968]. The opinion is also insufficient to support a finding of proximate cause because it leaves the determination of the essential finding up to conjecture. Smail v. Flock, 407 Pa. 148, 180 A.2d

59 [1962], and Warden v. Lyons Transportation, 432 Pa. 495, 248 A.2d 313 [1968].

The motions of Defendants for directed verdict will be granted.