John E. **KRIDLER** and Margaret
J. Kridler

v.

**FORD MOTOR COMPANY** and Zook Motors, Inc., also known as Zook Ford and Bruce Zook and John Zook, trading as Zook Motors, Inc. of Kane, Pennsylvania

John E. Kridler, Appellant.

No. 18090.

United States Court of Appeals,
Third Circuit.

Argued Jan. 23, 1970.

Decided March 2, 1970.

James D. McDonald, Jr., Quinn, Plate, Gent, Buseck & Leemhuis, Erie, Pa., for appellant.

John M. Wolford, Dunn, Wolford & Sesler, Erie, Pa., for appellee, Ford Motor Co.

C. Donald Gates, Brandt, Reister, Brandt & Malone, Pittsburgh, Pa., on the brief for appellees, Zook Motors, Inc., and others.

Before FORMAN, SEITZ and AD-AMS, Circuit Judges.

## OPINION OF THE COURT

ADAMS, Circuit Judge.

This action for personal injuries is another case which tests the expanding liability of automobile manufacturers and distributors to purchasers in situations where the product is alleged to be defective and an accident thereafter occurs. The suit here is based on express and implied warranties made in connection with the sale of an automobile manufactured by defendant Ford Motor Company. It arises as a result of an accident which happened on August 24, 1963.

The case was tried before the Honorable Gerald J. Weber and a jury in November, 1968. The jury failed to reach a verdict and a mistrial was declared. The Court thereafter granted defendants' motion for a directed verdict and judgment notwithstanding the failure of the jury to arrive at a verdict. Plaintiffs moved for a new trial, and on July 10, 1969, the District Court granted the motion conditioned on the vacation of the judgment by this Court. [Kridler v. Ford Motor Co., 300 F.Supp. 1163 (W. D.Pa.1969)] Mr. Kridler appealed from the entry of judgment for the defendants.

Mr. Kridler purchased a new 1963 Ford '300' from Zook Motors on March 28, 1963. Shortly after the purchase, Kridler began to drive the car 106 miles a day to and from work, and immediately encountered steering difficulties. He described the steering as "hard steering" which caused the car to handle "like a truck", making both left and right turns very difficult. He testified that between the time of purchase and the accident the steering problems were so severe that he complained and returned the vehicle to the dealer twenty-four times. The car was operated approximately 12,700 miles in the five months prior to the accident. During that time,

Kridler had to replace the front set of tires twice because of excessive wear.

On the day of the accident, Mr. and Mrs. Kridler were proceeding on Route 208. The weather was sunny and the road was dry. As Mr. Kridler drove up a hill, he saw a vehicle in front of him slow down. Kridler took his foot off the gas and "coasted up the hill". When he reached the top of the hill, he was aware of six cars in front of him. The driver of the front car in the line was in the process of making a right hand turn, and the driver immediately in front of the Kridlers, two to three car lengths away, applied the brakes. At this time, the Kridlers were travelling 10 to 15 miles per hour. When Mr. Kridler applied the brakes, his car went out of control and began a series of gyrations, bouncing up and down, from one side to the other. Ultimately, the car went sideways into a skid and off the road into a driveway.

After the accident, a mechanic found that the tie rod from the Kridler car was bent considerably, causing the front wheels to set at an odd angle so that the automobile could not be operated. The plaintiffs' expert testified that the tie rod was defective. His opinion was based on testimony that the Kridler car had excessive tire wear, uncertain steering characteristics and that after the accident the tie rod was found bent.

Considering the evidence in the light most favorable to the plaintiffs, as we are required to do on an appeal from a directed verdict for defendants, it appears there was sufficient evidence to require that the case be re-submitted to the jury.

█ The parties in this case assume that Pennsylvania law is controlling on the quantum of evidence necessary to establish a jury question on the issue of causation. Although there has been some dispute in other cases whether state or federal law governs this point, this Court previously considered the question and found that there is no dif-

ference in the standard followed in the Pennsylvania courts and in the federal courts. *See* Neville Chemical Co. v. Union Carbide Corp., 422 F.2d 1205 (3d Cir.1970); Rumsey v. Great Atlantic & Pacific Tea Co., 408 F.2d 89, 91 (3d Cir.1969) (*en banc*); Denneny v. Siegel, 407 F.2d 433 (3d Cir.1969). The standard used in Pennsylvania is set forth in Smith v. Bell Telephone Co., 397 Pa. 134, 153 A.2d 477 (1959) and Jones v. Treegoob, 433 Pa. 225, 249 A.2d 352 (1969). Under these decisions a case must be submitted to the jury if "the evidence presented [is] such that by reasoning from it, without resort to prejudice or guess, a jury can reach the conclusion sought by plaintiff, and not that that conclusion must be the *only* one which logically can be reached. It is not necessary, under Pennsylvania law, that every fact or circumstance point unerringly to liability; it is enough that there be sufficient facts for the jury to say reasonably that the preponderance favors liability. * * *" 397 Pa. at 138, 153 A.2d at 479–480.

■ The present suit was brought under a theory of breach of warranty. The District Court did not decide, and the parties do not raise on appeal, any question as to the interpretation of the warranties. The sole issue here is whether the District Judge erred in his decision that the plaintiffs produced insufficient evidence to establish the defective condition of the car as the proximate cause of the accident.

The Pennsylvania case closest in point was decided by the Superior Court of Pennsylvania after Judge Weber filed his opinion. MacDougall v. Ford Motor Co., 214 Pa.Super. 384, 257 A.2d 676 (1969), allocatur denied, was a suit for property damage brought under § 402A of the Restatement of Torts by a purchaser of a Ford Comet station wagon which went out of control after the plaintiff-driver experienced difficulty

with the steering. Judge Spaulding, speaking for a unanimous Superior Court, found that the testimony of the wife-plaintiff "permits a jury finding that a malfunction of the steering mechanism caused the accident." 214 Pa.Super. at 387, 257 A.2d at 678. Mrs. MacDougall testified that she was having difficulty "controlling her car", "it was handling badly", and the steering seemed to "stick". 214 Pa.Super. at 385, 257 A.2d at 677. After driving 50 miles Mrs. MacDougall could not control the steering wheel and the car went off the road. The crux of the Court's decision in *MacDougall* is that in suits under § 402A a plaintiff's proof of a "mechanical malfunction * * * is circumstantial evidence of the unfitness of the equipment." Judge Spaulding also stated that, "Proof of the special defect in construction or design causing a mechanical malfunction is not an essential element in establishing breach of warranty." 214 Pa.Super. at 389, 390, 257 A.2d at 670, 680.[1] Since the same standards apply in a suit for breach of warranty as in a suit for violation of § 402A, Kassab v. Central Soya, 432 Pa. 217, 246 A.2d 848, 856 (1968), the evidence in the present case must be examined in light of *MacDougall* to determine whether the trial court here was in error in directing a verdict for the defendants.

Mr. Kridler testified that several weeks after he purchased his car he complained to Zook Motors of steering problems. Although Kridler owned the car for five months at the time of the accident, he had taken it to Zook Motors for repairs 24 times. The car caused the tires to wear at an abnormally excessive rate—it had three sets within the five month period. Kridler described the accident as follows:

"We were going down Route 8—that is my wife and I—and there were six cars ahead of me, and there was a lit-

[1]. In Greco v. Bucciconi Engineering Co., 407 F.2d 87 (3d Cir. 1969), this Court decided that under Pennsylvania law proof that a "product functioned improp-

erly in the absence of abnormal use and reasonable secondary causes * * * establishes a 'defective condition.'"

tle hill going up and then, as you got to the top, it broke down, and there were six cars ahead of me. And they started to brake, put their brakes on, because the head car was going to turn to the right on Route 208. When they stopped, I—as they were stopping I applied my brakes, and when I did, I lost complete control of the car.

\* \* \* \* \* \*

"Well, it felt like the car—it went up and back down, and when it did my wife was thrown over against me, and she hit the ashtray and knocked it off. And then the car went back down and I was thrown against my wife. And it went back up, and my wife was throwed [sic] against me again, and it went three times, and it made a turn, that we were headed back the same way we were coming. It made a half-turn around, and we were slid sideways—we were slid sideways in these people's—in Martin's driveway."

Mr. Kridler's testimony was similar to Mrs. MacDougall's. Both found the performance of their cars abnormal immediately before the accidents. Admittedly, at the time of the accident, the MacDougall car was less than one month old and had been driven only 143 miles, whereas the Kridler car was five months old with 12,700 miles. Kridler however testified as to constant complaints relating to the steering mechanism.

Defendant Ford seeks to distinguish *MacDougall* on the ground that Mrs. MacDougall testified that the steering was "erratic", whereas Mr. Kridler complained of "hard" steering. The technical terminology used by these lay witnesses, however, should not be the basis for allowing one case to go to the jury and not the other.

The evidence as to causation is meager in both cases and perhaps more so in the present case than in *MacDougall*. Nonetheless, *MacDougall* does reflect the Pennsylvania law and under the standards set forth in that case there is a jury question on the issue of causation.

Comparing the lay testimony in *MacDougall* with that in the present case, the jury can make a rational decision as to causation.

The Pennsylvania courts favor submission to the jury of the issue of proximate cause of an accident. In fact the Pennsylvania Supreme Court has said that the "question of proximate cause of an accident is almost always one of fact for the jury." Anderson v. Bushong Pontiac Co., Inc., 404 Pa. 382, 391, 171 A.2d 771, 775 (1961); Ashby v. Philadelphia Electric Co., 328 Pa. 474, 478, 195 A. 887, 889 (1938).

*MacDougall* makes it clear that the plaintiff in a suit for breach of warranty or strict liability does not have to establish a particular defect as the proximate cause of the accident. The existence of a malfunction alone, according to the Pennsylvania Superior Court, establishes a "defective condition", and the plaintiff must prove only that the "malfunction" of the automobile was the proximate cause of the accident. Two other Pennsylvania accident cases lend further support for requiring the present case to go to the jury.

In Topelski v. Universal South Side Autos, Inc., 407 Pa. 339, 180 A.2d 414 (1962), a suit based on the theory of negligence, the Pennsylvania Supreme Court said there was an issue for the jury where the following evidence was produced: the driver of the car testified that the brakes failed, "there was no brake there"; a mechanic who examined the car testified that it had virtually no brakes; and another witness testified that immediately before the accident the driver was going at a speed such that he could not have stopped the car even with adequate brakes. 407 Pa. at 346–349, 180 A.2d at 417–418. The Court said that "where facts are disputed, or where from the undisputed facts there is room for reasonable differences of opinion as to whether the defendant's act was the, or a proximate cause of the injury, the matter is for the jury to decide." In

Knapp v. Willys-Ardmore, Inc., 174 Pa. Super. 90, 100 A.2d 105 (1953), cited by the trial judge, the plaintiff's evidence consisted of testimony that the automobile went suddenly out of control over the curb and into a telephone pole, and the tie rod became disconnected and dropped to the ground. The court held there was a jury question.

■ A principal reason given by Judge Weber for concluding that the plaintiffs' evidence of causation was insufficient was that plaintiffs "relied entirely upon the opinion testimony of [their expert witness] Mr. Nagler", and this testimony was not definitive enough as to the cause of the accident because it "related to a possibility rather than a reasonably certain probability." Although under *MacDougall*, plaintiffs here appear to have presented a jury question without Nagler's testimony, Nagler's testimony does in fact buttress the plaintiffs' position and is proper opinion evidence for the jury. Nagler's testimony in answer to a hypothetical question is as follows:

"My opinion, sir, is as to the reason for the accident and the *major contributing condition* is that some time prior to the accident there was an appreciable and noticeable distortion of some of the pertinent steering parts. The degree of this distortion or bending would not necessarily be represented by the condition of the parts as found following the accident, but the distortion was sufficient to cause the steering characteristics that have been reported. That condition also would be directly responsible for excessive rate of tread wear of several sets of tires.

"The change in the steering characteristics, in my opinion would be a *contributing factor, not necessarily the sole factor, but a contributing factor in losing control of the car* under the conditions which you have described." [Emphasis added].

The testimony that the steering defect was "the major contributing condition" and "a contributing factor" considered in connection with Mr. Kridler's testimony does not make a jury finding of causation pure conjecture or guess. The testimony is not that the malfunctioning automobile was the "possible" or "feasible" cause of the accident, or that this explanation was "within the realm of reason"; it goes further. The testimony does not, therefore, fall within the rhetoric which Warden v. Lyons Transportation Lines, Inc., 432 Pa. 495, 498, 248 A.2d 313, 314 (1968), cited by the trial judge, held to be below the necessary standard of proof. An expert is not required to give a "positive" opinion in order to have the opinion receive jury consideration. "A precise scientist who bases his opinion on an appraisal of probabilities is nonetheless an expert." Bialek v. Pittsburgh Brewing Co., 430 Pa. 176, 181, 242 A.2d 231, 233 (1968). In *MacDougall*, expert testimony that a defect "could cause" or was "very likely to cause" the accident was permissible.

The trial judge cast aspersions on Nagler's testimony because he said it was based on facts contrary to plaintiffs' testimony. Although there is some question regarding the sequence of events leading to the accident, i. e., the application of the brakes, the loss of control by the driver, and the skid, it is certainly not clear that Nagler's testimony was based on facts contrary to those stated by Kridler. The trial judge was apparently concerned with Nagler's answers on cross examination. He points to the portion of Nagler's testimony stating that one of the facts on which his opinion was based was the gyration of the car before the skid. However, Nagler did not say that he based his opinion on a loss of control before the brakes were applied. The appraisal and weighing of Nagler's testimony against that of Kridler was a question properly for the jury. Nagler, qualified as an expert, responded to a hypothetical question. There were no objections to his testi-

mony. Under these circumstances, it would not have been error for the jury to consider his opinion.

The judgment will be vacated, and a new trial will be granted consistent with the views expressed in this opinion.